JAMES W. PARKER AND W. W. GUTHRIE v. THE
CITY OF ATCHISON.

No. 9369.

1. WATER COURSE—*riparian proprietor may not change channel nor injure property of others.* The owner of property on the bank of a water course has a right to build barriers and confine the waters to the channel of the stream; but he cannot build and maintain a structure which will change the channel or project the waters against or upon the property of others in such a way as will result in substantial injury to such property.

2. ———— *channel changed by city, no complaint for twenty-five years, action for injury barred.* A city is authorized to change the channel of streams within the city, and where a change was made by which the waters of two branches were united above the property of an owner so as to increase the volume of water in the channel of the stream passing over his property, and the change occurred about twenty-five years before any complaint or claim was made, the right of action for the injury thereby occasioned was barred.

3. ———— *land-owner held estopped from interfering with viaduct constructed by city.* An expensive viaduct was constructed by the city, which, with the knowledge, acquiescence and oral consent of the owner, extended a few inches over upon his property, where it was maintained for about five years before complaint was made. *Held,* that such owner is estopped from claiming exclusive possession of the ground so occupied or from interfering with the maintenance of such structure.

4. ———— *action against city for injury from narrowing channel barred after two years.* Where a permanent improvement is made by a city on the bank of a water course in such a way as to narrow the channel and wash and injure private property on the opposite bank, the city is liable for the injury; but an action therefor can only be brought within two years after the erection of such improvement.

Error from Atchison District Court.  Hon. Robert M. Eaton, Judge pro tem.  Opinion filed April 10, 1897.  *Affirmed.*

This was an action brought by the City of Atchison against James W. Parker and W. W. Guthrie to enjoin them from obstructing the channel of White Clay

Creek and to compel them to remove certain obstructions which they had placed therein.

The defendants denied that they had unlawfully obstructed the stream; and alleged that the City had, by artificial obstructions, diverted the creek from its natural channel in such a way as to cause water to overflow and injure their property, to their damage in the sum of ten thousand dollars, for which they asked judgment.

A trial was had, and the following special findings of fact and conclusions of law were made by the court:

### FINDINGS OF FACT.

" 1.  The City of Atchison has been an incorporated municipality in the State of Kansas for over thirty years, and about the year 1880 was advanced to a city of the first class.  The defendants, James W. Parker and W. W. Guthrie, at the time of the commencement of this suit, were the owners of lots numbers eleven, twelve, thirteen and fourteen, in block thirty-nine, in the City of Atchison, known and designated as Old Atchison.

" 2.  Commercial Street is a regularly laid out, dedicated public street in the city, running east and west through the same, as is also Kansas Avenue, running east and west through said city, parallel with said Commercial Street, and the next street north of said Commercial Street.  Main Street is a public street in said city, running east and west and parallel with Commercial Street, and is the next street south of said Commercial Street.  Sixth Street is a public street in said city, running north and south, crossing Commercial Street and Main Street at right angles.  Seventh Street is a public street in said city, next west of said Sixth Street, running north and south and crossing Commercial Street and Main Street at right angles. Block thirty-nine in the City of Atchison is bounded on the north by Commercial Street, on the south by Main Street, on the east by Sixth Street and on the west by Seventh Street.  Said block contains fourteen lots; lots one to seven, inclusive, front on Commercial

Street in said city, and each is forty-five feet front by one hundred and fifty feet back. Lots eight to fourteen, inclusive, in said block front south on Main Street, and each is one hundred and fifty feet deep. There is a regularly laid out public alley, dedicated as such, fifteen feet wide, which runs east and west through the center of said block thirty-nine.

"3. For many years, and ever since the said City of Atchison has been incorporated, a natural water course known as White Clay Creek has run through the City of Atchison, the main branch thereof, flowing into said city from a southwesterly direction, and known as the south fork of said creek, thence, by way of winding course through said City, empties into the Missouri River. The bend in said creek at some places is very abrupt, being almost at right angles. For a great many years the south fork of said creek entered block 39 in said City at or near the southwest corner of said block 39 and the channel thereof ran in a northeasterly direction, entering lot 12 on the west, near the southwest corner thereof, and thence in a northeasterly direction across said lots 11, 12, 13 and 14, to the northeast corner of said lot 14, and the bed or channel thereof has always been upon said lots; thence in an easterly course for about three blocks in said City, when it turns almost due south, running thence into the Missouri River.

" 4. Prior to the year 1865 what is known as the north fork of said White Clay Creek entered said City from the northwest, and ran north of said Commercial Street, crossing the same and emptying into the south fork, or main branch, of said White Clay Creek near the center of block 16, south of Commercial Street, the next block east of said block 39. At that early day there was a depression in the ground on Commercial Street where said Seventh Street crosses Commercial Street, through which the City cut a channel, and the north fork of said creek was changed, running through said channel, and emptying into the south fork, or main branch, of said creek at the north end of lots 8, 9 and 10 in the southwest corner of block 39 in said City. The old channel of said north fork from or near Seventh Street, north of Commercial

Street, was filled up, and upon it some of the most substantial business structures in said City are now situated; as, for instance, the Ogden Block, the United States National Bank Building, and the dry goods building of D. C. Newcomb, and other stone and brick buildings. Seventh Street as laid out in said City has never been used as a public street for about two blocks south of Commercial Street, on account of said creek and the very steep bluff still south of Main Street.

"5. At that early day the lots in block thirty-nine fronting north on Commercial Street ran back south about a hundred feet, when they sloped toward the bed of White Clay Creek. The lots in said block fronting south on Main Street were upon little higher ground, and also sloped back to the bed of White Clay Creek. White Clay Creek was crossed on Sixth Street by a wooden bridge built upon wooden piles. The old buildings upon the lots in the north half of block thirty-nine having been burned down and removed, there have been erected and now stand upon said lots substantial stone and brick buildings, structures such as, for instance, the Exchange National Bank building and the A. J. Harwi Hardware Company's brick building. The lots in the south half of block thirty-nine have always been practically vacant and unimproved, though susceptible of improvement on the south end thereof fronting on Main Street, especially lots 12, 13, and 14.

" 6. The old Atlantic House, with its outbuildings, as well as the elm trees spoken of in the testimony by the old residents of the city, have all been destroyed, the trees rooted up and passed away, so that it is a very difficult matter to determine now just where the bed or channel of said stream was located in the early days of the history of the city — the fact having to be determined principally from the recollection of witnesses, which is somewhat conflicting (as naturally it would be), as to where the channel was in those days. But, at high water, evidently the ground where the alley now running east and west through said block is, would overflow, and then in dry season the water would recede back to the bed or channel of the creek; and the

same was true of said lots 12, 13 and 14 south of said bed or channel.

7. In the summer of 1883 the City of Atchison commenced to improve and repair by driving piles, riprapping, and filling in rock and earth, for the purpose of making the alley through the center of said block thirty-nine passable for teams and vehicles to and from the rear end of the business buildings on the north half of said block, for the purpose of loading and unloading merchandise thereto and therefrom; and, in the year 1884, the old wooden bridge across said creek on Sixth Street was taken away and an arched stone culvert thirty-six feet wide at the base was constructed across the original bed or channel of said stream, or within from three to five feet from where it has run for nearly thirty years; and since that time, above said culvert has been placed the north abutment of stone to the viaduct, afterward built upon iron pillars, elevating the travel, going south on Sixth Street, above the railroad tracks which are situated south of Main Street in said City. The said north abutment of stone extends along the east line of lot fourteen in block thirty-nine. The sides of the culvert were not constructed east and west,— that is, at right angles to Sixth Street, as laid out,— but were constructed obliquely from a southwest to a northeast position, to conform with the bed or channel of said creek, which at that point, as hereinbefore found, runs in that direction, coming in from the west. The north wall of said culvert was placed about three and one-half feet north of the south line of said alley. From the north wall of the culvert, west along the south line of the alley in the center of block thirty-nine, the City of Atchison caused wooden piles to be driven down for a distance of about seventy-six feet west from said culvert. which was afterward filled in with rock, brush and earth, at large expense to the City in protecting said roadway and alley from the encroachments of said stream, and making the same passable and in safe condition; and the top of said piling, which is even with the surface of the alley, is about sixteen feet above the bed of said stream.

"8. In dry seasons of the year there is but little

3—58 KAN.

water in the channel of said creek, but during heavy rains, floods and high freshets the storm water flowing down said stream causes the banks to overflow, carrying away rubbish and outbuildings built upon the banks thereof, and lodging them against obstructions in its course with great force.   The north branch of said creek drains the country to the northwest of the city, which is somewhat abrupt and hilly, through quite deep ravines, and the improvements made in the northwest part of the city, and the paving of streets in that part with blocks and brick, discharge the surface water more rapidly now into the ravines and gullies since about the year 1886 than it did before, and said water, in times of heavy rains, floods and freshets, coming down said north fork and, through an arched stone culvert under said Commercial Street, empties into the south fork, or main branch, of said creek with greater force than formerly, forming an eddy at the junction with said main creek, thereby crumbling and carrying away the graveled banks of lots 11, 12, 13 and 14 of the defendants, and throwing the channel of said creek further to the south at that point, and continuing over on defendants' lots. Lots 8, 9 and 10 in the southwest corner of block 39 are in the creek, as also now all of the south half of lot 11, owned by defendants, nearly all of lot 12, and about three-fourths of lot 13, and over one-half of lot 14, owned by defendants.   Across said creek on the southwest corner of block 39 there is another wooden bridge, built upon piles, over which the travel of said Main Street passes.

" 9.  The defendants have been the owners of lots 11, 12, 13 and 14, block 39, since January, 1882; the title to the property being in the name of the defendant Parker until March 25, 1889, when the interest of defendant Guthrie was conveyed to him.

" 10.  In the month of April, 1889, at the commencement of this suit, and at the time the temporary injunction was allowed, the defendants began, at the west end of the south wall of the culvert under said viaduct as now constructed, to drive two rows of wooden piles about six feet apart, fastening them together, and placing between said piles, rock and

stone, forming a crib, and had so constructed said piling about the distance of seventy-five feet west, conforming to the south side of culvert, from said viaduct; and it was their purpose to further build and sink said piling in a southwesterly course up to the west line of lot eleven, when they expected to turn it south on lot ten, and thereby cause sediment of the water-flow to fall in south of said piling and fill up their said lots. The defendants intended to place in similar piling work on the north side of said channel from the end of the piling work done by the city, as hereinbefore found, westerly along the south line of said alley and the bottom of the bank, which said piling on both sides of said stream was at no place of less distance apart than the width of the culvert under Sixth Street, thereby forming, as it would, a water chute of the width of the culvert from about the west line of lot number eleven through and under the culvert; which, if done, and especially in times of heavy rains, floods and freshets, would be unable to contain the volume of water rushing down said stream, and would overflow, not only the defendants' property, but the alley on the north side of said creek, and as the water through said chute, as it were, would flow in a northeasterly direction and thence nearly due east, would direct the water against the bank, piling on the south side of the alley and the north end of the culvert, and would thereby in time tear away the same, as well as undermine the north wall of the culvert and injure the viaduct approach constructed across said Sixth Street in said city."

CONCLUSIONS OF LAW.

"1. That the motion filed by the defendants, June 28, 1889, to dissolve the temporary injunction theretofore granted in this case, should be overruled; and the defendants should be perpetually enjoined from driving and placing piling in White Clay Creek at the place therein as found and described in conclusion of fact number ten herein.

"2. That the defendants should pay the costs of this proceeding."

The defendants moved for judgment upon the find-

ings, and also for a new trial, both of which motions were refused. Judgment was then awarded perpetually enjoining the defendants from obstructing the stream ; and of this judgment they complain.

*H. M. Jackson,* and *W. F. Guthrie,* for plaintiffs in error.

*H. C. Solomon,* City Attorney, for defendant in error.

JOHNSTON, J.   The foregoing findings of fact as to the character and effect of the barrier erected and proposed to be erected along the channel of the creek by the plaintiffs in error, must be accepted in this court. It is somewhat difficult to understand why a barrier so low and frail should imperil or injure substantial improvements like those of the City on the other side of the stream, but there is testimony in the record tending to support that finding, and, therefore, that injury will result, must be regarded as an established fact in this court.   Ordinarily, there is but little water in the creek ; but in times of freshets and floods the usual channel which passes over the lots of the plaintiffs in error is insufficient to convey the water, and sometimes it overflows such portions of the lots as are outside of the channel.   The plaintiffs in error had a right to confine the waters of the creek to the channel, and, to accomplish that, were entitled to build cribs or barriers along the south bank of the creek in order to protect their property

1. Riparian proprietor may not change channel.

from the overflow and waste.   This must be done, however, in such a way as not to interfere with the rights of others.   They cannot build and maintain structures which will change the channel of the stream, or project the water against and upon the property of another in such a way as will result in substantial injury to either an owner upon the opposite side of the stream, or those

above or below.   Some testimony was offered tend-
ing to show that the barrier in question projected
the water in such direction and with such force as to
injuriously affect, as well the piling and wall built to
protect the alley on the north side of the channel, as
an expensive stone culvert which had been constructed
across Sixth Street.   This being true, the City had
cause for complaint, and the court was warranted in
awarding an injunction to prevent the injury.

In their cross-petition and in argument, plaintiffs in
error claim that the improvements made by the City
on the alley north of their lots, and on the street east
of them, prejudicially interfered with their rights.
They also claim that the north branch of the creek,
which formerly united with the creek below their lots,
was, by the City, diverted from its natural channel,
and its waters thrown into the creek above their lots
so as to largely increase the volume of water and
result in injury to them.   Complaint is made that
the court failed to properly consider these claims and
to award the plaintiffs in error the relief to which
they were entitled.   As to the action of the City in
uniting the streams west of their property, no claim
can justly be made.   The channel of the
north branch was changed and the union
of the streams effected more than thirty
years ago, and long before the plaintiffs in error ac-
quired the property.   It appears that the streams
were united in 1865; and since that time Atchison has
grown to be a city, and costly structures have been
erected and valuable improvements made where the
north branch used to flow.   The plaintiffs in error be-
came the owners of the lots in 1882,— about seventeen
years after the change had been made; and it does
not appear that they made any claim by reason of the
change until their answer was filed in this action, in

2. No complaint
for 25 years,
action barred.

1889. It was then too late to claim anything from the City on account of the change. The diversion at that early day was evidently deemed to be in the interest of the public; but whatever may have been the purpose, and however much or little the increased flow of water in the creek may have affected the lots in question, that course was taken and that condition existed for more than fifteen years before the plaintiffs in error owned the property and for about twenty-five years before the present action was begun. Mistakes then made, if any, or infringements upon rights, if any, have been cured by the lapse of time and the conduct of the interested parties.

The claim made on account of the viaduct, which was constructed at great expense along Sixth Street on the east side of the lots, is without merit. It extends a few inches upon the lots, but it appears to have been so constructed with the knowledge, acquiescence and consent of the owners. In its construction, it appears that provision was also made that the owners might use the viaduct as a partial support for buildings or other structures erected upon the lot. Assent and acquiescence, under such circumstances, and where large amounts of money have been expended in the erection of permanent improvements, preclude the plaintiffs in error from claiming exclusive possession, or from interfering with the rights then obtained by the City. The doctrine of equitable estoppel applies with great force in cases of this kind. Upon every principle of fair dealing, they were estopped, and, although there was no formal dedication of the land, the court rightly refused them any relief.

3. Land-owner estopped from interfering with viaduct.

They also ask for damages on account of the improvement in the alley north of the lots, which was made at a point where the bank of the creek was

sloping, and the action of the water and condition of the ground rendered the alley at that point useless as a highway. It was in the main portion of the City, and there were large business houses on the lots north of the alley. With a view to prevent the encroachment of the stream and at the same time make the alley available, piles were driven on the south side of the alley, and a fill was made of about sixteen feet above the body of the stream. This made the alley passable, and also afforded protection to the culvert through Sixth Street, the end of which was immediately below the improvement, and both of which were erected in the years 1883 and 1884. In the ordinary stages of water, the fill made in the alley would have little effect on the flow, but in an extraordinary storm or flood, it would prevent the water from spreading out upon the sloping bank upon the north side; and in so much as the waterway is narrowed on that side, to that extent the water is thrown against the south bank, and in such cases probably some injury will result. The alley is a highway, and the City is clothed with ample authority to improve and make the same passable. Power is also given to the City to alter and change the channel of streams and water courses. Gen. Stat. 1889, ¶ 555, subdiv. 31. In doing so, however, reasonable care should be exercised to avoid unnecessary injury to private property. It appears, therefore, that the improvement was authorized and cannot be said to be illegal. The fact that there is statutory authority for the same does not exempt the City from liability for injury to private property. In making the improvements it is not required to provide for extraordinary floods and storms, but must exercise reasonable care to guard against such conditions as are ordinarily incident to the creek. It would seem from

the testimony that the mere improvement of the alley could not have operated as a very serious injury to the property of the plaintiffs in error; but assuming that it was injured to some extent, they were too late in claiming a recovery. As the improvement is permanent in its character, but one action could be maintained, in which all damages, present or prospective, would be recoverable. The action accrued in 1884, when the structure was completed; and, under the third subdivision of section 18 of the Civil Code, it was barred at the end of two years.

4. Action for narrowing channel barred in two years.

Some other matters are discussed by counsel, but, confining our inquiry to the relief asked for in the prayer of the cross-petition, we readily conclude that no error was committed by the court in denying such relief.

The judgment will be affirmed.