No. 25,247.

A. S. HORNOR et al., *Appellants*, v. CITY OF BAXTER SPRINGS, *Appellee*.

SYLLABUS BY THE COURT.

1. WATERCOURSE—*Partly Natural—Partly Artificial—Attributes of a Natural Watercourse*. A watercourse which is partly artificial—that is, partly made by the action of flowing water and partly by the hand of man—does not necessarily deprive the stream of the attributes of a watercourse, nor prevent the application of the rules thereto which apply to other watercourses.

2. PRACTICE, TRIAL COURT—*Motion for New Trial—Motion for Judgment on Special Findings*. Where a party files a motion stating grounds for a new trial and also a ground for judgment on the special findings, it may be regarded as two motions, and when the court acts on the latter and it is determined adversely it may then consider and determine whether or not the grounds stated for a new trial exist.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed June 7, 1924. Reversed.

*Archie D. Neale*, of Chetopa, for the appellants.
*C. E. Rumery*, of Baxter Springs, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment awarding the plaintiffs damages for the obstruction, by the defendant, of a watercourse, which caused injury to plaintiff's property.

It was alleged that the plaintiffs owned lots, in the city of Baxter Springs, which sloped toward a draw and generally recognized watercourse, the water in which flowed into a river. It was averred that the city built a storm sewer in an alley adjoining plaintiff's lots, and in doing so threw up an embankment in the watercourse, leaving no outlet for the water, so that water was thrown back upon plaintiff's lots, greatly damaging them, for which plaintiff asked a recovery. The answer of the city was a general denial, with a specific denial that the construction of the sewer had damaged plaintiff's property in the manner alleged or in any other manner. Trial was had with a jury, which resulted in a verdict in favor of plaintiffs for $300, and with it the following special findings:

"1. In what way was the real estate involved damaged? A. By partially obstructing the watercourse.

"2. Do you find the storm sewer complained of was negligently constructed? A. Yes.

"3. If you answer question number 2 in the affirmative, in what did the negligence consist?   A.   The storm sewer being placed in the previous watercourse.

"4. Was that part of the ditch lying south of this land dug by the hand of man, or made by water?   A.   Both."

In a motion filed by the defendant it asked for judgment in its favor, notwithstanding the general verdict, assigning for grounds: (1) excessive verdict; (2) verdict not supported by the evidence; (3) verdict contrary to the evidence; and (4) verdict in conflict with the special findings.   The excessive award and the attacks on the evidence were grounds for a new trial, but manifestly not for judgment on the special findings.   Obviously the court did not act on the first three grounds of the motion, as the record recites that the motion for judgment on the special findings came on for hearing, and the court sustained the motion and rendered judgment against the plaintiffs and in favor of the defendant on the special findings. Evidently no consideration was given to the evidence, and it further appears that a motion of defendant made at the close of plaintiffs' evidence to direct a verdict in its favor because plaintiffs' evidence was insufficient to warrant a recovery was denied by the court.   The evidence produced has not been brought up on this appeal.   The record consists only of the pleadings, instructions, findings and judgment, and hence the only question presented is, Do the special findings overthrow the general verdict and warrant a judgment in favor of the defendant?   The jury have found, in effect, that the water obstructed flows in a watercourse, that the sewer which caused the obstruction was negligently constructed, that the negligence of the city consisted in placing the sewer in the watercourse, and that the draw or channel through which the water flowed was made both by the hand of man and the action of the water.   It is contended by defendant that the channel obstructed was not a natural watercourse because it was made in part by the hand of man and not entirely by the action of water, and from his argument it may be assumed that this was the view of the trial court.   It is argued that the city was not required to provide an outlet for mere surface water or for the flow of water which does not pass through a watercourse.   Here, however, the channel in question was alleged and found to be a watercourse.   To be a watercourse there must be bed, banks and a flow of water, the source of which may be surface water alone, or springs; but whatever the source, if it has the elements named, in-

cluding that of permanence, it is to be regarded as a watercourse. To give it the necessary degree of permanence it is not necessary that the water should flow continuously in it. The fact that it may be intermittent in its flow or there may be no flow in droughty periods would not deprive it of its character as a watercourse. (*Gibbs v. Williams,* 25 Kan. 214; *Rait v. Furrow,* 74 Kan. 101, 85 Pac. 934; *Brown v. Schneider,* 81 Kan. 486, 106 Pac. 41.)

Much reliance is placed in the fact and the finding that the waterway had been cut in part by the hand of man and in part by the action of water. A stream does not lose the attributes of a watercourse by the fact that a part of its channel may have been artificially created. The straightening of a crooked watercourse in order to facilitate the flow and avoid the flooding of bordering lands is not uncommon. The diversion of a stream by substituting an artificial channel for part of a natural one, by common consent, running in the same general direction, which has existed for a considerable time, may have the characteristics of a watercourse, to which riparian rights would attach. In *Miner v. Nichols,* 24 R. I. 199, where a natural stream, fed from springs and the watershed of the surrounding lands, flowed through complainant's land, and for over twenty-five years the watercourse had been diverted by an artificial ditch, but pursued substantially the course of the natural flow of the water, it was held that the complainant was entitled to an unobstructed flow of the water, and an injunction was allowed against the maintenance of an embankment impeding the flow. In *Freeman v. Weeks,* 45 Mich. 335, Judge Cooley said:

"If, by common consent, the ditch was dug as a neighborhood drain and has remained open as a watercourse for a series of years, it ought to be governed by the same rules that apply to other watercourses." (p. 336.)

(See, also, *Rait v. Furrow,* supra; *Cloyes v. Middlebury Electric Co.,* 80 Vt. 109; *Stimson v. Town of Brookline,* 197 Mass. 568; Case note, 16 L. R. A., n. s., 290; 27 R. C. L. 1068.)

It follows that the fact that the waterway was partly artificial did not necessarily deprive the stream of the attributes of a watercourse, nor warrant the rendering of a judgment on the special findings. The motion as filed was in fact and should be regarded as two motions, one for a new trial on the first three grounds thereof, and one for judgment on the special findings. The trial court, deeming the latter to be controlling, decided it, and did not pass on the former.

The judgment on the special findings is reversed, and the cause is remanded with the direction that the court begin where it left off; that is, to consider and determine whether the verdict was supported by the evidence and whether the award made was excessive.