(877 P.2d 462)
No. 69,991

BARBARA J. KEMNA, HAROLD M. KEMNA, GARY F. WIEBELHAUS, JUDITH F. WIEBELHAUS, and SUSAN M. DALY, *Appellees*, v. KANSAS DEPARTMENT OF TRANSPORTATION, *Appellant*.

Opinion filed July 15, 1994.

*Vicky S. Johnson*, of Kansas Department of Transportation, for appellant.

*Forrest E. Short*, of Short, Gentry & Bishop, of Fort Scott, for appellees.

Before ELLIOTT, P.J., GERNON and PIERRON, JJ.

GERNON, J.: The Kansas Department of Transportation (KDOT) appeals from a jury verdict awarding damages to several plaintiffs whose properties were damaged by floodwaters in 1986. It contends the trial court erred in failing to grant its motion for a directed verdict on the issues of causation and whether it had a duty to design its highway improvements in order to accommodate the flood in the present case. We affirm.

On October 2 and 3, 1986, the area around Fort Scott, Kansas, received record-breaking amounts of rainfall, causing severe flooding. Over a 24-hour period, approximately 8.6 inches of rain fell on ground that was already thoroughly saturated. This deluge of rainfall was part of a larger storm which lasted for eight days in late September and early October in 1986.

At the time of the flood, Harold and Barbara Kemna owned a KOA campground, a mobile home sales facility called Homestead Homes, and their personal residence. The floodwaters rose to five or six feet in the KOA office and even higher in the camping spaces. The Kemnas' home was filled with 11 to 12 feet of water, and mobile homes at the Homestead Homes facility floated off their blocks and into an adjacent field. The flood also caused similar damage to a motel and restaurant owned by Gary and Judith Wiebelhaus and to a home owned by Susan Daly.

On September 23, 1988, the Kemnas, the Wiebelhauses, and Susan Daly (plaintiffs) filed suit against KDOT. Plaintiffs alleged that between 1974 and 1986, KDOT had constructed 14 miles of new highway to relocate part of U.S. Highway 69. The new highway ran from Fort Scott to Prescott, Kansas. Plaintiffs further alleged that, by reason of its design and construction of the new highway, KDOT "effectively, and negligently, altered the natural northern flood plain of said Marmaton River, and Mill Creek, its tributary to the west, by creating a barrier, or dam, across said flood plain which prevented the flow of water over the same during times of high water, or flooding."

Plaintiffs also argued that the new highway was not constructed in conformity with the generally recognized and prevailing engineering standards in existence at the time and that the design did not provide for sufficient drainage under and through the construction. They argued that the damages they suffered as a result of the flooding were directly and proximately caused by the negligent design and construction of the new highway and requested total damages in the amount of $1,740,933.

A trial on the matter was held on December 7-10, 1992. At the close of plaintiffs' case, KDOT moved for a directed verdict on three separate bases. KDOT argued: (1) It was exempt from liability for damage resulting from natural weather conditions pursuant to K.S.A. 1993 Supp. 75-6104(l) of the Kansas Tort Claims Act; (2) it was exempt from liability because the highway project complied with generally accepted and prevailing standards in existence at the time the plan or design was prepared, pursuant to K.S.A. 1993 Supp. 75-6104(m); and (3) plaintiffs failed to show that the changes made in the drainage of the property caused the damage at issue.

The trial court denied KDOT's motion, stating:

"Well, it's not the most powerful testimony I've heard with respect to that point but plaintiff did present some testimony. Concerning the weight and persuasiveness of it I think is a matter for the jury.

"I'm going to find based upon everything I've heard that at this point with respect to this motion plaintiffs' evidence is sufficient to survive the case. It is [a] submissible case. Then we'll listen to what the defendant's experts have to say."

KDOT again moved for a directed verdict at the close of all the evidence, but the court denied the motion, finding that plaintiffs had made a submissible case and that it was now a matter for the jury to decide.

The jury found in favor of plaintiffs, awarding $197,806.50 in total damages. The jury found specifically that KDOT was negligent in planning or designing the highway and that this negligence caused damage to plaintiffs' property. KDOT filed a motion for a new trial, but the motion was denied by the court. KDOT appeals.

KDOT contends that it had no duty to design the highway improvements in a manner that would successfully accommodate water from a flood of such an extraordinary nature. As authority for its position, KDOT cites two Kansas Supreme Court cases, *Clements v. Phoenix Utility Co.*, 119 Kan. 190, 237 Pac. 1062 (1925), and *Riddle v. Railway Co.*, 88 Kan. 248, 128 Pac. 195 (1912), which it argues are controlling on this issue.

In *Riddle*, plaintiffs brought suit against a railway company to recover for damages to their crops alleged to have resulted from the negligent construction of embankments and bridges for the railroad. The court held that the railway company, in carrying its railroad over a watercourse and the approaches thereto, must provide sufficient outlets not only for the ordinary flow of water but also for the escape of water in times of floods which may reasonably be expected to occur. 88 Kan. at 252-53. However, the court also stated that no provision need be made for floods which could not reasonably have been foreseen or anticipated. 88 Kan. 248, Syl. ¶ 2. Based upon the facts in *Riddle*, the court found that the engineers who designed and built the embankments had reason to anticipate such flooding based upon the frequency of similar floods in the past. 88 Kan. at 253. See also

*Parker v. City of Atchison,* 58 Kan. 29, 39, 48 Pac. 631 (1897) (city has power to alter channel of streams and watercourses, and "[i]n making the improvements it is not required to provide for extraordinary floods and storms, but must exercise reasonable care to guard against such conditions as are ordinarily incident to the creek").

In *Clements v. Phoenix Utility Co.,* 119 Kan. 190, plaintiff alleged that construction of a grade embankment for a line of railroad had impeded the natural flow of water and increased the depth of the floodwater on plaintiff's land. The court affirmed the trial court's finding of liability on the part of the utility company, stating:

"The flood in this case was an ordinary flood, similar to those which had occurred at irregular intervals. previously, not as great as the one of the year before; one which a person familiar with the history of the river at that point would naturally anticipate. In constructing the grade or embankment for its roadbed defendant made no provision, or very little provision, for letting the flood waters pass, but made provision only for surface drainage . . . Because of this embankment, plaintiff's land was covered to a larger area and to a greater depth than it would otherwise have been. The result is, plaintiff sustained damages which he would not otherwise have sustained, for which defendant is liable." 119 Kan. at 197.

The court defined an ordinary flood as " 'one the repetition of which, though at uncertain intervals, might, by the exercise of ordinary diligence in investigating the character and habits of the stream, . . . have been anticipated.' " On the other hand, an extraordinary flood " 'is one of those unexpected visitations whose comings are not foreshadowed by the usual course of nature, and whose magnitude and destructiveness could not have been anticipated or provided against by the exercise of ordinary foresight.' " 119 Kan. at 196 (quoting 13 Am. & Eng. Ency. L. 687 [2d ed. 1899]).

KDOT contends that the facts of the present case place the storm and resulting flood in Fort Scott in the extraordinary category and that based upon the above-referenced case law, it had no duty to design or construct its improvements to accommodate such a flood.

Many of plaintiffs' witnesses testified that they had never seen flooding of such a magnitude in this area before. Water rose 4.5 feet above the 100-year flood level of 800.5 feet. The evidence

also reflected that KDOT had taken some measures to prevent its improvements from causing or contributing to any flooding; it built a 4 foot by 4 foot reinforced concrete drainage outlet and also constructed a detention pond to protect downstream property. Plaintiffs' expert testified that these structures were inadequate to contain the flooding which occurred in October of 1986 but did not state that they were inadequate to contain "ordinary" flooding naturally occurring in the region.

Plaintiffs argue that it was undisputed that KDOT had a nondiscretionary and nondelegable duty to design sufficient drainage structures in accordance with the applicable generally accepted and prevailing engineering standards, as described by plaintiffs' expert witness, Don Hurlbert.

The Standard Operating Manual of the State Highway Commission of Kansas provides general guidelines as well as detailed procedures for use in the preparation of highway plans. The manual states in relevant part:

"The design criteria presented in this volume are based on the concept of reasonable measures. It is the policy of the Kansas Department of Transportation that the highway drainage design will comply with one of the following tests:
1. Make no substantial change.
2. Improve the existing drainage.
3. *Provide reasonable measures to offset effects of substantial changes* (purchase of easement, payment of damage, construction of drainage structures)." (Emphasis added.)

Hurlbert testified that the cost of building a larger reinforced concrete box to aid in alleviating floodwaters was approximately one quarter of one percent of the cost of the entire project.

KDOT also relied upon the standards discussed in the Flood Insurance Study done by the United States Department of Housing and Urban Development for the city of Fort Scott, Kansas, in 1978. The study required KDOT to design its improvements so that the 100-year flood elevation would not rise more than one foot and also required KDOT to provide for 100-year flood passage without damage to the upstream property. Hurlbert testified that neither of these requirements were met.

Thus, while it was relatively clear at the close of the plaintiffs' case that KDOT's drainage structures were inadequate to prevent

or control flooding like that which occurred in Fort Scott in 1986, sufficient evidence existed to show that KDOT had also failed to design its improvements in accordance with the generally accepted and prevailing engineering standards in existence at the time. Given the standards in place at the present time and the developments in construction which may not have been available when *Clements* was decided in 1925, we conclude that a requirement to accommodate a 100-year flood should not be considered an "extraordinary" event.

The trial court did not err in allowing the case to go to the jury.

KDOT next argues that the plaintiffs did not meet their burden of proof in demonstrating that it was more likely than not that the highway project caused the flooding which damaged their properties in 1986. KDOT raised this issue twice, once at the close of plaintiffs' case and again after all the evidence was presented.

Ordinarily causation, like negligence, is determined by a jury. *St. Clair v. Denny*, 245 Kan. 414, 417, 781 P.2d 1043 (1989). However, "[w]here no evidence is presented on a particular issue, or the evidence presented is undisputed and it is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination." *Sampson v. Hunt*, 233 Kan. 572, 578, 665 P.2d 743 (1983). "The persuasiveness of testimony is for the jury's consideration; not this court on appeal." *Stucky v. Johnson*, 213 Kan. 738, 739, 518 P.2d 937 (1974).

KDOT alleges that the plaintiffs' case was based entirely on speculation and conjecture and was unsupported by expert testimony. We disagree. The evidence clearly reflected that, in constructing the highway improvements, KDOT built an embankment which resulted in the loss of 28,000 square feet of waterway for a 350-acre drainage area. Plaintiffs' expert testified that during a 100-year storm, the water runoff through KDOT's new drainage structure would be approximately 1125 cubic feet per second and would rapidly overcome the capacity of this structure. Hurlbert also testified that KDOT's placement of the detention pond aggravated this situation. He further stated that the project as de-

signed and built would raise the 100-year flood level by more than 4.5 feet in the area of the plaintiffs' properties. The sum and substance of Hurlbert's testimony was that KDOT had built a structure in the flood plain and supplied it with undersized drainage capability. His testimony was subjected to rigorous cross-examination in the presence of the jury.

KDOT also contends that, based upon the evidence it presented, it would have been impossible for the highway project to have caused the flooding which occurred at Susan Daly's home, due to the location of the property and the local topography. However, Daly did testify that the floodwaters came from the south and the east, not from the creek that was located west of her property.

While the evidence as to causation was not overwhelming, it was, however, not susceptible to only one inference or conclusion. Based upon this court's standard of review, which requires us to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, the trial court did not err in allowing the case to go to the jury.

Affirmed.