(897 P.2d 169)

No. 71,419

ONEITA JOHNSON and CLARA JOHNSON, *Plaintiffs/Appellants/ Cross-Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF PRATT COUNTY, *et al.*, *Defendants/Appellees/Cross-Appellants*, and KANSAS DEPARTMENT OF TRANSPORTATION, *Third-Party Defendant/Appellee.*

Opinion filed May 31, 1995.

*Keith Renner*, of Barnett, Yockers, & Renner, P.A., of Wakarusa, for the appellants/cross-appellees.

*Allen C. Glendenning*, of Watkins, Calcara, Rondeau & Friedeman, Chtd., of Great Bend, for the appellees/cross-appellants the Board of Pratt County Commissioners, *et al.*

*J. Stan Sexton* and *John A. O'Leary*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, for the appellee/cross-appellant Mid-Continent Engineers.

*Theresa A. Pasek*, staff attorney, and *Michael B. Rees*, chief counsel, for the appellee Kansas Department of Transportation.

Before BRISCOE, C.J., RULON and GREEN, JJ.

BRISCOE, C.J.: Oneita and Clara Johnson appeal from the trial court's entry of summary judgment that dismissed their claims for damages to their real estate from river flooding, which they contend was caused by the design and construction of a new bridge upstream from their properties.

The Johnsons own and live on adjoining pieces of real estate on the Ninnescah River in Pratt County, Kansas. The river runs from the west to the east, passing first through Clara's 13 acres and then through Oneita's 20 acres. Oneita's and Clara's homes are on the north side of the river. On this part of the river, the north bank is the steeper bank, and a flood plain lies to the south. A county road runs north-south along the western boundary of Clara's property and crosses the river at the bridge that is the subject of this action.

The bridge was built in 1988, replacing a wooden bridge that had been in place for at least 62 years. The old bridge was approximately 57 feet long and was inadequate to accommodate water from a 25-year flood. In fact, flood waters were frequently diverted to the flood plain to the south. The flood water would cover the south approach road and then flow back into the river channel. Although the river flooded every year, it had not caused any substantial erosion of the north bank along the Johnsons' property.

In the mid-1980s, the Board of County Commissioners of Pratt County (County) decided to replace the old bridge and hired Mid-Continent Engineers (MCE) to design the new bridge and oversee its construction. Acting as the County's agent to obtain federal highway funds, the Kansas Department of Transportation (KDOT) approved the plans and accepted the completed project. By contract, KDOT was responsible for insuring compliance with appli-

cable regulations. KDOT obtained no permit for a river channel alteration because KDOT did not believe one was needed.

As required by state and federal standards, the new bridge was designed to accommodate a 25-year flood and to raise the 100-year flood level upstream by no more than a foot. The new bridge is 142 feet long and is two feet higher than the old bridge. As part of the bridge project, 34 trees along the banks were removed, the river channel was widened and moved south, and the south approach road was raised two to three feet higher for a distance of about 600 feet. As a result, under flood conditions, much less water is diverted to the flood plain, and two and a half times more water passes under the new bridge, although it passes more slowly.

In July 1988, shortly after completion of the bridge, heavy rain fell in the area. The river flooded and washed out a 15-foot strip of Oneita's land on the north bank of the river, encroaching toward her barn and washing away several trees. A two- or three-foot strip of Clara's land on the north bank also washed out. Oneita believed the new bridge caused the erosion of her property. She retained an attorney and requested that the County place riprap along the north bank to prevent further erosion. The County refused because MCE advised it was not necessary; however, one county commissioner assured Oneita they would take care of the problem and would not let a flood take her barn. In an attempt to prevent further erosion of Oneita's property, and at MCE's recommendation, the County straightened the channel and removed some trees. Although Oneita thought the County should have riprapped the bank, she decided to trust the County and, as her lawyer put it, deferred to its "expertise." Oneita took no further action to seek redress for the property damage that had occurred.

In April 1991, more flooding occurred, washing out a strip of land approximately 50 feet deep along the north bank of Clara's property and a strip 20 feet deep on Oneita's property. Both Oneita and Clara were worried that further flooding would endanger their homes.

The Johnsons complained to the County, but the County responded that it was not responsible for the damage or for taking any preventive measures. The Johnsons also demanded that MCE

take action to prevent further damage. In June 1991, the Division of Water Resources (Division) informed the County that because no channel alteration permit had been obtained, as required by the Obstructions in Streams Act, K.S.A. 82a-301 *et seq.*, it must either apply for an after-the-fact permit or remove any obstructions from the stream channel and return the stream to its natural condition. The Division warned that failure to do so would subject the County to criminal penalties and could render the County liable to landowners for damages.

The County filed an application for a permit. In February 1992, the Division determined it would not issue a permit unless the bridge project was modified to prevent erosion downstream, or the County presented an engineering analysis showing that modification was not required to prevent erosion. In April 1993, the Division issued a permit, subject to the condition that erosion of the north bank downstream from the bridge within the easement be corrected. The County brought an action for judicial review, which was dismissed when the Division accepted a proposal that the County perform minor work in the channel by the bridge. This work was completed by January 1994. The Johnsons have paid some $20,000 for their own bank stabilization work.

The Johnsons commenced this action for damages for negligence in April 1993, less than two years after the 1991 flood. In addition to the County and MCE, they named as a defendant the contractor that built the bridge. The County denied liability, filed a cross-claim against MCE for indemnity, and filed third-party claims against KDOT, the State Board of Agriculture, and the Division of Water Resources and its chief engineer. The County sought a declaratory judgment that no permit from the Division was required for the project. Against KDOT, the County sought indemnification of any damages it might be required to pay because of KDOT's failure to obtain a permit before construction. The claims against the builder, the Board of Agriculture, the Division, and its chief engineer were dismissed, and no one has challenged their dismissal on appeal.

The Johnsons' expert considered the new bridge to be the cause of the erosion because it no longer diverted water onto the flood

plain to the south, and kept more water in the channel where it could erode the north bank on the Johnsons' property. In his opinion, the new bridge did not meet design standards because the designer did not take into account the higher risk of erosion downstream and failed to advise the County of this risk and the need for bank stabilization measures.

An expert for defendants agreed that the effect on erosion downstream is a fundamental part of bridge design, and that upon identifying a significant risk of increased erosion, a designer should advise the agency building the bridge of the problem so that it can take appropriate action. However, he testified the new bridge had no significant effect on the erosion downstream. In his opinion, the water diverted south by the old bridge flowed back north into the channel within a few hundred feet, pushing the flow in the channel toward the north bank, and the overall effect on the north bank was the same as if all the water had flowed under the bridge. He attributed the erosion of the north bank in 1988 and 1991 to natural movement of the river channel.

The trial court denied the Johnsons' motion to amend their petition to add a nuisance claim and entered summary judgment dismissing their claims against the County and MCE. The court ruled that Oneita's claims were barred by the statute of limitations although Clara's claims were not. The court ruled that the County was immune from liability under K.S.A. 75-6104(m), that neither the County nor MCE had any duty to warn or protect downstream landowners against erosion that might occur from water flowing in the river, and that any of the Johnsons' claims based on the failure to obtain a permit were moot because a permit was later issued. The court entered judgment in favor of KDOT on the County's third-party claim because the claim was conditioned on a finding that the County was liable to the Johnsons, and because the permit issue was moot.

The Johnsons appeal the denial of their motion to amend their petition and the summary judgment entered in favor of the County and MCE. The County and MCE cross-appeal from the ruling that Clara's claim was not barred by the statute of limitations. The County cross-appeals from the judgment in favor of KDOT on the

County's third-party claim in the event this court concludes the trial court erred in dismissing the Johnsons' claims against the County.

The applicable standard of review for an appeal from a summary judgment is set out in *Kerns v. G.A.C. Inc.,* 255 Kan. 264, 268, 875 P.2d 949 (1994):

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]"

## I. Duty to warn and protect.

The Johnsons contend the trial court erred in concluding the County and MCE had no duty to warn or protect downstream landowners from erosion that might occur because of the new bridge.

## A. Duty owed.

We must first determine the applicable law to define the duty owed. As regards the law governing watercourses, the general rule is:

" 'The owner of property on the bank of a water course has a right to build barriers and confine the waters to the channel of the stream; but he cannot build and maintain a structure which will change the channel or project the waters against or upon the property of others in such a way as will result in substantial injury to such property.' " *Dougan v. Rossville Drainage Dist.,* 243 Kan. 315, 319, 757 P.2d 272 (1988) (quoting *Parker v. City of Atchison,* 58 Kan. 29, Syl. ¶ 1, 48 Pac. 631 [1897]).

The party building the structure must use reasonable care to avoid unnecessary injury. *Parker,* 58 Kan. at 39; *Kemna v. Kansas Dept. of Transportation,* 19 Kan. App. 2d 846, 849, 877 P.2d 462 (1994).

By applying this rule to the present case, the defendants would clearly owe a duty to warn or protect the Johnsons against erosion from changes in the flow of water caused by the new bridge if a *natural* feature rather than the old bridge had diverted flood water south to the flood plain, thereby protecting the north bank from erosion. Whether the old bridge can be considered a natural feature whose alteration can give rise to a duty to downstream landowners presents a factual question unique to this case.

We note that some language in surface water cases suggests that a party may be liable only for *changing the natural flow of water.* In *Dougan*, 243 Kan. at 319, the court noted that an upper landowner may not gather and divert surface water from its natural course and thereby exceed the carrying capacity of the natural watercourse if lower landowners are damaged. The court further noted that alteration of the *natural* flow of surface water may be a nuisance when it damages the property of others. Similarly, in *Baldwin v. City of Overland Park*, 205 Kan. 1, 8, 468 P.2d 168 (1970), the court stated: "A municipality has no right to alter the course of drainage of surface water so as to throw water upon property where it does not *naturally* flow." (Emphasis added.) Such language could be read to support a conclusion that defendants could not be liable for confining water to the natural channel and restoring the natural watercourse. It was essentially uncontroverted that the old bridge had changed the original natural watercourse by diverting flood water out of the channel and that the new bridge at least partially restored the original watercourse by keeping flood water in the channel.

However, these cases hold only that a party is liable for damages caused by altering the natural flow of water; they do not hold that a party cannot be liable in negligence for altering an "artificial" flow back to its original "natural" course after 62 years. Moreover, this is not a surface water case. Water that overflows the banks of a river during ordinary floods and then flows over lowlands or valleys within the general course of the stream before returning to the stream farther down its course is water of the stream, not surface water. *Foster v. Kansas Gas & Elec. Co.*, 146 Kan. 284, 287-

88, 69 P.2d 729 (1937). This case is governed by the law applicable to watercourses.

In *Hornor v. City of Baxter Springs*, 116 Kan. 288, 226 Pac. 779 (1924), defendant argued it was not liable for damages caused by obstructing a watercourse because the watercourse was partly man-made and the case was therefore governed by the rules for surface water. The court rejected the argument, stating:

> "A stream does not lose the attributes of a watercourse by the fact that a part of its channel may have been artificially created. The straightening of a crooked watercourse in order to facilitate the flow and avoid the flooding of bordering lands is not uncommon. The diversion of a stream by substituting an artificial channel for part of a natural one, by common consent, running in the same general direction, which has existed for a considerable time, may have the characteristics of a watercourse, to which riparian rights would attach. . . .
>
> . . . .
>
> "It follows that the fact that the waterway was partly artificial did not necessarily deprive the stream of the attributes of a watercourse." 116 Kan. at 290.

Here, the old bridge was in place for at least 62 years, and there was evidence there was no significant erosion of the north bank on the Johnsons' property during that time. The Johnsons' depositions show they regarded the absence of erosion as the *natural* condition of the river, and there was evidence that at least one of them relied on this absence of erosion. Clara's house, which is now threatened by erosion of the north bank, was built in 1964. These facts, which must be taken as true for purposes of summary judgment, justify treatment of the watercourse as altered by the old bridge as the *natural* watercourse.

The general rule that an owner cannot build or maintain a structure that will change the channel of a watercourse or project its waters onto another's property in a way that will cause damage applies here. The record provides support for the Johnsons' contention that defendants owed them a duty to use reasonable care to avoid unnecessary damage to the Johnsons' property.

B. Existence of duty based on preventive measures after 1988 flood.

The Johnsons also contend that defendants owed them a duty under Restatement (Second) of Torts § 323 (1965), which was

adopted as the law of this state in *Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482, 490, 657 P.2d 532 (1983):

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking."

Here, there was evidence in the record that after the 1988 flood, the County, on the advice of MCE, undertook to protect Oneita's land from further erosion. In the opinion of the Johnsons' expert, these measures were not sufficient to protect the property from further damage, and there was evidence that Oneita relied on those measures to her detriment. Although Oneita thought defendants should have placed riprap to protect the north bank from erosion, she decided to trust the County and, as her attorney put it, to defer to defendants' "expertise." Consequently, she took no action to protect her property from erosion. See *Burgess v. Perdue*, 239 Kan. 473, 481, 721 P.2d 239 (1986). The record supports Oneita's claim that defendants owed her a duty under Restatement (Second) of Torts § 323.

The County argues the Johnsons cannot raise this theory, asserting that the trial court denied the § 323 claim because the Johnsons did not file a § 323 claim with the County under K.S.A. 12-105b. The County further asserts that the ruling must stand because the Johnsons have not briefed the 12-105b issue on appeal. The County misstates the record. The trial court did not rule that the § 323 theory was barred by 12-105b. The trial court expressly stated there was no need to resolve the issue. The Johnsons are not barred from arguing the § 323 theory by their failure to challenge a ruling that the trial court did not render.

C. MCE's duty to the Johnsons for services undertaken for the County.

MCE raises Restatement (Second) of Torts § 324A (1965) in support of its argument that the trial court was correct in concluding it owed the Johnsons no duty. That section, which was adopted

as the law of this state in *Schmeck v. City of Shawnee*, 232 Kan. 11, 26, 651 P.2d 585 (1982), provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

   (a) his failure to exercise reasonable care increases the risk of such harm, or

   (b) he has undertaken to perform a duty owed by the other to the third person, or

   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Here, MCE undertook to design a bridge for the County. There is evidence in the record that consideration of possible damage a bridge might cause to the property of landowners on the stream is a fundamental part of bridge design. Consequently, MCE should have recognized that its engineering services in designing the bridge were necessary for the protection of those landowners. There was evidence that by failing to foresee or advise the County of the effect of the bridge on the Johnsons' property, MCE increased the risk of harm. The trial court erred in concluding that MCE owed no duty to the Johnsons.

## II. Statute of limitations: Oneita Johnson's claims.

Oneita contends the trial court erred in concluding her claims were barred by the statute of limitations. She commenced this action more than two years after the first damage to her property in 1988. The damage was obvious and extensive, and the record shows that she attributed it to the new bridge. Ordinarily, these claims must be brought within two years of the damage. See K.S.A. 60-513.

### A. Damages from 1988 flood.

Oneita argues her claims are not barred because the damages to her land were temporary rather than permanent. The statute of limitations bars Oneita from recovering damages from the 1988 flood. That flood washed out a 15-foot strip of Oneita's land. Although in theory it might be possible to restore the riverbank to its former condition, as a practical matter the soil washed away by

the river is gone. Those damages were permanent. See *McAlister v. Atlantic Richfield Co.,* 233 Kan. 252, 262-64, 662 P.2d 1203 (1983).

B. Damages from 1991 flood.

While the statute of limitations bars Oneita's claims from the 1988 flood, it does not bar her claims for damages from the 1991 flood. When the injury from flooding is recurring or continuing in nature, the limitations period starts to run only when the land is actually harmed by the flood, and each injury causes a new cause of action to accrue. This is especially true if the situation involves uncertainty over whether the cause of the flooding can be abated or over the amount of future damages. *Gowing v. McCandless,* 219 Kan. 140, 144, 547 P.2d 338 (1976). When the amount of future damages likely to be caused by recurrent flooding cannot be determined or estimated, the damaged party is not required to bring a single action for both past and future damages. *Dougan v. Rossville Drainage District,* 2 Kan. App. 2d 125, 128, 575 P.2d 1316, *rev. denied* 225 Kan. 843 (1978). Here, whether in 1988 the Johnsons could have estimated the amount of future damages from erosion from unpredictable recurring floods was a question of fact that precluded summary judgment.

C. Estoppel.

Relying on *Bowen v. Westerhaus,* 224 Kan. 42, 578 P.2d 1102 (1978), and *Levi Strauss & Co. v. Sheaffer,* 8 Kan. App. 2d 117, 650 P.2d 738 (1982), Oneita argues that defendants are estopped from asserting the statute of limitations. She argues that by undertaking measures to prevent further erosion to her property in 1988, defendants lulled her into a false sense of security and led her to forego filing suit until after the statute had run. Her reliance on these cases is misplaced. The preventive measures undertaken by defendants could reasonably have led Oneita to forego more extensive preventive measures, but that is not the same as leading her to forego the filing of a suit for damages from the 1988 flood.

III. Statute of limitations—Clara Johnson's claims.

MCE has cross-appealed, contending the trial court erred in concluding that Clara's claims were not barred by the statute of limitations.

The trial court correctly ruled that Clara's claims were not barred by the statute of limitations. She is not barred from seeking damages from the 1991 flood for the reasons discussed above; in 1988, she could not have ascertained the amount of future damages. Nor does the record conclusively establish that the statute of limitations bars her from seeking damages from the 1988 flood. Under K.S.A. 60-513(b), a cause of action for negligence does not accrue until plaintiff knows or has reason to know that a substantial injury has been suffered and that defendant's negligence is the cause of the injury. *Gilger v. Lee Constr., Inc.*, 14 Kan. App. 2d 679, Syl. ¶ 1, 798 P.2d 495 (1990), *modified on other grounds* 249 Kan. 307, 820 P.2d 390 (1991).

At her deposition, Clara testified that the 1988 flood had only a minor effect on her property. The flood washed out two to three feet of soil along the river and left the drop from the bank to the river a little deeper. She did not consider this to be a lot of erosion or regard it as damage, but considered it to be normal and natural minor changes from flood waters. She testified that she may have lost a little more soil than in previous floods, but she did not believe that the erosion was related to the new bridge because there was no significant change in the riverbank. She said she was not concerned in 1988 and may not have known Oneita had complained to the county in 1988 until after the 1991 flood.

Some of Clara's statements were contradictory. She said she thought the erosion was greater in 1988 than in the past, and attributed it to the new bridge because the water had previously gone to the south and had never washed anything out. However, the deposition transcript shows that Clara, who was in her eighties, was sometimes confused about which flood counsel was questioning her. Statements by the Johnsons' original attorney, John Black, also suggest that Clara may have considered the damage to her land from the 1988 flood to be substantial and may have attributed it to the new bridge. However, counsel did not make these written statements in 1988, but after the 1991 flood in a letter to MCE and in the Johnsons' objection to the County's after-the-fact application for a permit. Consequently, counsel may have been mis-

taken in statements that were contrary to Clara's deposition testimony.

The record does not establish that Clara knew or should have known that the new bridge was the cause of the erosion to her property from the 1988 flood. Nor does it establish that the damage was substantial. The trial court did not err in ruling that her claims were not barred. See *Olson v. State Highway Commission*, 235 Kan. 20, 26-27, 679 P.2d 167 (1984)

IV. Immunity from liability.

The Johnsons contend the trial court erred in concluding the County is immune from liability under K.S.A. 1994 Supp. 75-6104(m), which provides that a governmental entity is not liable for damages resulting from

"the plan or design for the construction of or an improvement to public property, either in its original construction or any improvement thereto, if the plan or design is approved in advance of the construction or improvement by the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

There are two basic requirements for immunity under this subsection: advance approval of the plan or design by a governmental body or employee exercising discretionary authority and conformity of the plan or design with the generally recognized and prevailing standards. The Johnsons argue that neither requirement was met.

Although KDOT may have exercised discretionary authority when it approved the bridge plans (see K.S.A. 68-1111), whether the requirement that the plans conform to generally recognized and prevailing standards was satisfied was disputed. The experts for both sides agreed that consideration of the effect of a bridge on downstream property was a fundamental part of bridge design. In the opinion of the Johnsons' expert, the bridge did not conform to that standard. It changed the course of the water in a way that would cause erosion downstream, but no measures were taken to prevent the erosion. Defendants' expert disagreed on whether the

bridge conformed to that standard. Conformity to standards was a disputed question of fact that precluded summary judgment.

### V. Failure to obtain permit prior to construction of new bridge.

The Johnsons contend the trial court erred in concluding that any claims based on the failure of defendants to obtain a permit from the Division of Water Resources before the bridge was built were moot.

The issuance of a permit after-the-fact established that the Division considered the bridge to be satisfactory upon compliance with all conditions. The permit also showed that the Division considered the bridge to have been no threat to the Johnsons when built; the record shows that the work ultimately required by the Division as a condition for the permit was intended to protect the bridge, not the Johnsons' property.

However, the Division's decision to issue an after-the-fact permit does not establish that the bridge was lawful for all purposes when it was built and does not preclude the Johnsons from raising the issue in connection with other issues. K.S.A. 82a-301 expressly provides that it is unlawful to build any water obstruction or change the course, current, or cross-section of any stream without the *prior written* consent or permit of the chief engineer of the Division. K.S.A. 82a-303 provides it is unlawful to begin construction of any water obstruction without complying with the regulations of the Division. We note also that one requirement for governmental immunity under K.S.A. 1994 Supp. 75-6104(m) is *prior* approval of plans or designs. Upon remand, the Johnsons should be allowed to raise failure to obtain a permit before construction where it is relevant to the other issues raised.

### VI. Denial of motion to amend.

The Johnsons contend that the trial court erred in denying their motion to amend their petition to add a claim for nuisance.

K.S.A. 60-215(a) provides that leave to amend pleadings "shall be freely given when justice so requires." There was no good reason to prevent the Johnsons from adding the nuisance claim. Maintaining a structure that causes recurrent flooding can constitute a nuisance. See *Dougan,* 243 Kan. at 319-20. The facts upon which

the nuisance claim was based were the same as those underlying the negligence claims raised in the original petition, so there was no surprise or unfair prejudice to defendants. The trial court erred in denying the motion to amend the petition.

VII. County's cross-appeal of judgment in favor of KDOT.

In its cross-appeal, the County contends that if the judgment in its favor is reversed, the judgment in favor of KDOT on the County's third-party claim must also be reversed. In the third-party petition against KDOT, the County specifically sought indemnification of any costs of additional work that might be required as a condition of a permit and not reimbursable by the federal government because of KDOT's failure to obtain a permit before construction. The County also sought indemnification of any damages it might be required to pay because of KDOT's failure to obtain a permit before construction.

The County was required to do some minor channel work as a condition of the after-the-fact permit. The record does not establish whether the costs of that work were reimbursed by the federal government or whether they were incurred because of KDOT's failure to obtain a permit before construction. The claim may not be moot to the limited extent that the County may have incurred unreimbursed costs from the channel work as a result of KDOT's failure to obtain a permit before construction.

The County's more general claim for indemnification of any damages it might be required to pay because of KDOT's failure to obtain a permit before construction is also not moot, because the Johnsons' claim based on defendants' failure to obtain a permit is not moot. If the Johnsons prevail on their claim against the County, the County's claim against KDOT for indemnification is not moot.

KDOT argues it cannot be liable to the County because it acted as the County's agent. This argument is without merit. KDOT's status as an agent for a fully disclosed principal did not insulate it from liability to its principal, the County. See 3 Am. Jur. 2d, Agency §§ 209, 215.

KDOT argues the judgment in its favor should be affirmed because it cannot be liable to the County under a hold-harmless

agreement contained in the initial agency agreement between the County and KDOT's predecessor, the State Highway Commission. That agreement included a provision that the County would hold-the Commission harmless from any and all liabilities and claims

"arising out of or in connection with the performance of any contract, . . . or the construction or maintenance of any project, or of the acts of the COMMIS-SION, its authorized agents or employees, when acting under the provisions of this agreement and any contracts or agreements entered into in connection there-with."

The agreement provided it was binding on the successors and assigns of both parties, and it was still in effect when the parties entered into the contract for bridge work. Under the plain language of the agency agreement, KDOT is not liable to the County for any claims arising out of KDOT's acts.

The County's argument that KDOT can be liable under a 1987 hold-harmless agreement is without merit. The 1987 contract provided that the County would hold KDOT harmless from any and all claims or liabilities caused by the County. It did not provide that KDOT would be liable for its own acts. The 1987 agreement did not conflict with the initial agreement, which therefore remained in effect.

This is purely an issue of law that can be decided on appeal. Although the trial court did not rule on this issue, a judgment may be affirmed if it was right for any reason. See *Prairie State Bank v. Hoefgen,* 245 Kan. 236, 245, 777 P.2d 811 (1989).

The trial court's ruling in favor of the County and MCE on the issue of duty is reversed. The ruling that Oneita's claims were barred by the statute of limitations is affirmed as to damages from the 1988 flood and reversed as to damages from the 1991 flood. The ruling that Clara's claims for damages from both floods are not barred by the statute of limitations is affirmed. The ruling that the County is immune from liability is reversed. The finding of mootness of defendants' failure to obtain a permit from the Division before construction of the bridge is reversed; the Johnsons may raise failure to obtain a permit where it is relevant to the other issues raised. The denial of the Johnsons' motion to amend their petition to add a nuisance claim is reversed. The summary judg-

ment in favor of KDOT on the County's third-party claim is affirmed on the basis of the hold-harmless provision in the agreement between those parties. The case is remanded for further proceedings on the Johnsons' surviving claims.

Affirmed in part, reversed in part, and remanded for further proceedings.