No. 71,419

ONEITA JOHNSON and CLARA JOHNSON, *Plaintiffs/Appellants/ Cross-Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF PRATT COUNTY, *et al.*, *Defendants/Appellees/Cross-Appellants*, and KANSAS DEPARTMENT OF TRANSPORTATION, *Third-Party Defendant/Appellee.*

(913 P.2d 119)

306

Opinion filed March 8, 1996.

*Keith Renner*, of Barnett, Yockers, & Renner, P.A., of Wakarusa, argued the cause and was on the briefs for appellants/cross-appellees.

*Allen G. Glendenning*, of Watkins, Calcara, Rondeau & Friedeman, Chtd., of Great Bend, argued the cause and was on the briefs for appellees/cross-appellants the Board of Pratt County Commissioners, *et al.*

*J. Stan Sexton*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, argued the cause, and *John A. O'Leary*, of the same firm, was with him on the briefs for appellee/cross-appellant Mid-Continent Engineers.

*Vicky S. Johnson*, staff attorney, argued the cause, and *Theresa A. Pasek*, staff attorney, and *Michael B. Rees*, chief counsel, were on the briefs for appellee Kansas Department of Transportation.

The opinion of the court was delivered by

SIX, J.: This water law case is on appeal from summary judgment. Plaintiffs Oneita and Clara Johnson sued defendants Board of County Commissioners of Pratt County (the County) and Mid-Continent Engineers (MCE) for negligent design and construction of a new bridge over the Ninnescah River, upstream from their properties. The Johnsons seek recovery for erosion damage resulting from flooding of the Ninnescah in 1988 and 1991, which they assert was caused by the new bridge. The County filed a third-party claim for indemnification against the Kansas Department of

Transportation (KDOT). KDOT was the County's agent during the design and construction of the bridge.

The district court granted summary judgment for the defendants and denied the Johnsons leave to amend their petition to add a nuisance claim. The county's third-party claim against KDOT was also dismissed.

The Court of Appeals reversed in part, affirmed in part, and remanded. *Johnson v. Board of Pratt County Comm'rs*, 21 Kan. App. 2d 76, 897 P.2d 169 (1995). We granted the petitions for review of the County and MCE. Our jurisdiction is under K.S.A. 20-3018(b).

The issues we review under a summary judgment focus are whether: (1) the County and MCE owed a legal duty to the Johnsons, (2) the County is immune from liability under the Kansas Tort Claims Act (KTCA), K.S.A. 1995 Supp. 75-6104(m), (3) any of the Johnsons' claims are time barred, (4) the failure to obtain a K.S.A. 82a-301 *et seq.* permit from the State Board of Agriculture, Division of Water Resources (the Division) before bridge construction is moot, (5) the Johnsons' notice of claim to the County failed to comply with K.S.A. 12-105b, thus barring a separate claim by Oneita based upon statements made and remedial work done by the County after the 1988 flood, (6) the district court erred in denying the Johnsons' motion to amend their petition to add a nuisance claim, and (7) the district court erred in dismissing the County's third-party claim against KDOT.

The County and MCE cross-appeal from the ruling that Clara's claim was not barred by the statute of limitations. The County cross-appeals from the judgment in favor of KDOT on the County's third-party claim.

Our review of the record and of the parties' contentions convinces us that summary judgment was not the proper procedural vehicle for resolving this case. See *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993) (rules relating to summary judgment reviewed). We affirm the Court of Appeals in part and reverse in part. The district court also is affirmed in part and reversed in part. We remand to the district court for further proceedings.

## FACTS

The Court of Appeals stated the facts and procedural history. Additional facts are referenced in this opinion.

"The Johnsons own and live on adjoining pieces of real estate on the Ninnescah River in Pratt County, Kansas. The river runs from the west to the east, passing first through Clara's 13 acres and then through Oneita's 20 acres. Oneita's and Clara's homes are on the north side of the river. On this part of the river, the north bank is the steeper bank, and a flood plain lies to the south. A county road runs north-south along the western boundary of Clara's property and crosses the river at the bridge that is the subject of this action. [Clara's property begins at the east edge of the bridge and extends to Oneita's property.]

"The bridge was built in 1988, replacing a wooden bridge that had been in place for at least 62 years. The old bridge was approximately 57 feet long and was inadequate to accommodate water from a 25-year flood. In fact, flood waters were frequently diverted to the flood plain to the south. The flood water would cover the south approach road and then flow back into the river channel. Although the river flooded every year, it had not caused any substantial erosion of the north bank along the Johnsons' property.

"In the mid-1980s, the Board of County Commissioners of Pratt County (County) decided to replace the old bridge and hired Mid-Continent Engineers (MCE) to design the new bridge and oversee its construction. Acting as the County's agent to obtain federal highway funds, the Kansas Department of Transportation (KDOT) approved the plans and accepted the completed project. By contract, KDOT was responsible for insuring compliance with applicable regulations. KDOT obtained no permit for a river channel alteration because KDOT did not believe one was needed.

"As required by state and federal standards, the new bridge was designed to accommodate a 25-year flood and to raise the 100-year flood level upstream by no more than a foot. The new bridge is 142 feet long and is two feet higher than the old bridge. As part of the bridge project, 34 trees along the banks were removed, the river channel was widened and moved south, and the south approach road was raised two to three feet higher for a distance of about 600 feet. [The material used to elevate the road level was excavated from the channel underneath the bridge. The channel was widened to about 150 feet at the bridge and for some distance upstream and downstream from the bridge.] As a result, under flood conditions, much less water is diverted to the flood plain, and two and a half times more water passes under the new bridge, although it passes more slowly.

"In July 1988, shortly after completion of the bridge, heavy rain fell in the area. The river flooded and washed out a 15-foot strip of Oneita's land on the north bank of the river, encroaching toward her barn and washing away several trees. A two- or three-foot strip of Clara's land on the north bank also washed out. Oneita believed the new bridge caused the erosion of her property. She retained an

attorney and requested that the County place riprap [layering of rock or concrete] along the north bank to prevent further erosion. The County refused because MCE advised it was not necessary; however, one county commissioner assured Oneita they would take care of the problem and would not let a flood take her barn. In an attempt to prevent further erosion of Oneita's property, and at MCE's recommendation, the County straightened the channel and removed some trees. Although Oneita thought the County should have riprapped the bank, she decided to trust the County and, as her lawyer put it, deferred to its "expertise." Oneita took no further action to seek redress for the property damage that had occurred.

"In April 1991, more flooding occurred, washing out a strip of land approximately 50 feet deep along the north bank of Clara's property and a strip 20 feet deep on Oneita's property. Both Oneita and Clara were worried that further flooding would endanger their homes.

"The Johnsons complained to the County, but the County responded that it was not responsible for the damage or for taking any preventive measures. The Johnsons also demanded that MCE take action to prevent further damage. In June 1991, the Division of Water Resources (Division) informed the County that because no channel alteration permit had been obtained, as required by the Obstructions in Streams Act, K.S.A. 82a-301 *et seq.*, it must either apply for an after-the-fact permit or remove any obstructions from the stream channel and return the stream to its natural condition. The Division warned that failure to do so would subject the County to criminal penalties and could render the County liable to landowners for damages.

"The County filed an application for a permit. In February 1992, the Division determined it would not issue a permit unless the bridge project was modified to prevent erosion downstream, or the County presented an engineering analysis showing that modification was not required to prevent erosion. In April 1993, the Division issued a permit, subject to the condition that erosion of the north bank downstream from the bridge within the easement be corrected. The County brought an action for judicial review, which was dismissed when the Division accepted a proposal that the County perform minor work in the channel by the bridge. This work was completed by January 1994. The Johnsons have paid some $20,000 for their own bank stabilization work.

"The Johnsons commenced this action for damages for negligence in April 1993, less than two years after the 1991 flood. In addition to the County and MCE, they named as a defendant the contractor that built the bridge. The County denied liability, filed a cross-claim against MCE for indemnity, and filed third-party claims against KDOT, the State Board of Agriculture, and the Division of Water Resources and its chief engineer. The County sought a declaratory judgment that no permit from the Division was required for the project. Against KDOT, the County sought indemnification of any damages it might be required to pay because of KDOT's failure to obtain a permit before construction. The claims against the builder, the Board of Agriculture, the Division, and its chief

engineer were dismissed, and no one has challenged their dismissal on appeal." 21 Kan. App. 2d at 78-83.

## The Expert Opinions

Bruce M. McEnroe, Ph.D., the Johnsons' expert, opined: (a) Erosion damage occurring at the Johnsons' properties was a direct result of a design flaw in the new bridge; (b) the new bridge allowed discharge of water underneath of about 2 and ½ times the discharge allowed under the old bridge, causing the downstream channel to expand, thus resulting in erosion to the Johnsons' properties; (c) four factors increased water discharge underneath the new bridge: (1) increasing the bridge span, (2) raising the elevation of the road approaching the bridge on either side, (3) removing trees (some of which were growing in the channel and provided resistance to water flow underneath the bridge) in the vicinity of the bridge, and (4) excavating the channel in the vicinity of the bridge to enlarge it; (d) had the old bridge been in place during the April 1991 flood, the Johnsons would have experienced little, if any, erosion; and (e) the bridge designer failed to consider the erosion the new bridge would cause on downstream properties, which is a deviation from accepted engineering standards and practices.

Daryl B. Simons, Ph.D., the defendants' expert, reasoned: (a) The bridge design was not flawed and did not violate accepted and prevailing design standards in effect at the time; (b) an upstream bridge failure during the April 1991 flood caused water discharge at the Johnsons' properties that was the equivalent of a flood event of in excess of 180 years, which the new bridge withstood; (c) the new bridge was properly designed to accommodate a 25-year flood event, so that flood waters would pass underneath and not over the road to the south of the bridge; (d) the old bridge would have failed had it been in place during the April 1991 flood. The Johnsons would have experienced significant channel shifting and bank erosion with the old bridge because the narrower span of the old bridge increased flood water velocity underneath and diverted flood waters south over the road, which would cut back diagonally into the main channel downstream, causing erosion. Channel shift-

ing, scouring, and erosion, an expected and common event, has occurred in recent years at the Johnsons' properties independent of the bridge. Simons agreed that consideration of the effect a bridge will have on upstream and downstream property is a fundamental part of any bridge design.

### The Court of Appeals' Opinion

Both the County and MCE dispute the statement in the Court of Appeals' opinion that the old bridge had been in place for over 62 years. They attach to their petitions for review a "Structure, Inventory and Appraisal Sheet" indicating that a wooden bridge was built in 1958. The Johnsons argue that this document, which is not part of the record, should be disregarded for lack of foundation.

Whether the wooden bridge had been in place since 1958 or much earlier is not controlling at this summary judgment stage. Oneita testified that during the 62 years she had lived on her property, she had never experienced the loss of soil that occurred after the new bridge was built in 1988. We decline the invitation to take judicial notice of the Structure, Inventory, and Appraisal Sheet.

MCE also contends that the Court of Appeals "ignored, omitted reference to, or found as legally insignificant, without so stating" numerous additional facts. These facts concern the scope of MCE's duties under the engineering consulting contract, the extent of erosion damage to the Johnsons' properties in 1988, and the Johnsons' knowledge concerning such damages. We conclude that these facts are either legally insignificant or controverted.

## DISCUSSION
### A Duty Owing

Under the facts of this case, did the County and MCE owe a legal duty to the Johnsons upon which the Johnsons may assert a claim for negligence? The answer is, "Yes."

### The County

Under the KTCA, K.S.A. 75-6101 *et seq.*, a "governmental entity," such as a county, is subject to the same liability exposure as

a private person, unless an exception applies. K.S.A. 75-6103(a). A governmental entity is liable, as a private person would be, for damages caused by flooding land of a lower riparian landowner. *Dougan v. Rossville Drainage District*, 243 Kan. 315, 319, 757 P.2d 272 (1988). A municipal corporation incurs the same liability as an individual when it damages the land of another person by changing the drainage course and casting water, which would not have flowed there naturally, on the land of another person in greater quantities than would naturally have flowed there. *Baldwin v. City of Overland Park*, 205 Kan. 1, 5, 468 P.2d 168 (1970).

In *Dougan*, 243 Kan. at 319, we noted that the rule protecting a lower landowner derives from *Parker v. City of Atchison*, 58 Kan. 29, Syl. ¶ 1, 48 Pac. 631 (1897):

" 'The owner of property on the bank of a water course has a right to build barriers and confine the waters to the channel of the stream; but he cannot build and maintain a structure which will change the channel or project the waters against or upon the property of others in such a way as will result in substantial injury to such property.' "

In *Simon v. Neises*, 193 Kan. 343, 346-47, 395 P.2d 308 (1964), we described the *Parker* holding:

"[W]e point out that as early as 1897 in the case of *Parker v. City of Atchison*, 58 Kan. 29, 48 Pac. 631, this court, in discussing the rights of property owners to repel flood waters, stated the aversion must be done in such a way as not to interfere with the rights of others; that structures cannot be built or maintained which will change the channel of the stream or project the water against and upon the property of another in such a way as will result in substantial injury to either the owner upon the opposite side of the stream or to those above or below."

The *Parker* rule is followed even though the overflow and damage occurs some distance downstream from the point the upper riparian proprietor discharges the surface water into the natural watercourse. *Dougan v. Rossville Drainage District*, 2 Kan. App. 2d 125, Syl. ¶ 2, 575 P.2d 1316 (1978).

In *Parker*, we observed:

"Power is also given to the City to alter and change the channel of streams and water courses. [Citation omitted.] In doing so, however, reasonable care should be exercised to avoid unnecessary injury to private property. It appears, therefore, that the improvement was authorized and cannot be said to be illegal. The fact

that there is statutory authority for the same does not exempt the City from liability for injury to private property." 58 Kan. at 39.

The term "watercourse" has been defined as follows:

"To be a watercourse there must be bed, banks and a flow of water, the source of which may be surface water alone, or springs; but whatever the source, if it has the elements named, including that of permanence, it is to be regarded as a watercourse." *Hornor v. City of Baxter Springs*, 116 Kan. 288, 289-90, 226 Pac. 779 (1924).

If water continues to flow in the same direction while outside the banks of a stream, returning upon the subsidence of the flood, it is to be deemed a part of the running stream, and not surface water. *Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 622, 106 Pac. 1034 (1910).

Early railroad cases established additional duties owed by a party building a bridge over a watercourse. See *Union Trust Company v. Cuppy*, 26 Kan. 754, 762-63 (1882) (quoting the jury instruction reciting those duties and determining it to be correct).

"[The duty of one building a bridge over a natural watercourse] springs from an obligation to refrain from inflicting any needless injury upon another. If when a bridge is about to be constructed the probabilities are that the stream to be crossed will at times overflow its banks there is as much occasion to provide an outlet for the surplus water as for that which is confined within the channel. Where the adjacent lands are no higher than the banks it may be impractical to provide an opening any larger than the channel itself or to avoid presenting some obstruction to the passage of flood water. But where the ground rises as it recedes from the stream, and especially where there are secondary banks, the capacity of the wider channel so formed must be taken into account." *Manufacturing Co.*, 81 Kan. at 623.

The fact that a flood was unusual and out of the ordinary does not necessarily relieve the party building the bridge of liability. *Riddle v. Railway Co.*, 88 Kan. 248, 251-52, 128 Pac. 195 (1912) (question for the jury as to whether the flood was one to be reasonably anticipated and provided for). See *Kemna v. Kansas Dept. of Transportation*, 19 Kan. App. 2d 846, 851, 877 P.2d 462 (1994) ("[A] requirement to accommodate a 100-year flood [in designing for adequate highway drainage] should not be considered an 'extraordinary' event.").

## The Parties' Contentions

According to the Johnsons, with the old bridge, flood water would extend over the flood plain south of the bridge, flowing over the lower road level and back into the channel downstream from the bridge. The new bridge diverted water from the flood plain to the channel underneath the bridge. Before construction of the new bridge, neither Oneita nor Clara had observed any substantial erosion in all the years they had lived there. The Johnsons contend that the County and MCE failed to take into account the erosion that would result on downstream property as the channel expanded in width to accommodate the greatly increased volume of flood water flowing underneath the bridge.

The County and MCE argue that the new bridge returned the watercourse to its natural state. Because the old bridge acted as a dam, it was inadequate to allow flood waters to pass underneath it. The new bridge accommodates the flood water and did not cause erosion of the Johnsons' properties. The County and MCE also argue that the watercourse, as it existed with the old bridge, was artificial, because the old bridge acted as a man-made obstruction to the natural watercourse. The new bridge removed the obstruction.

## Analysis

Oneita stated the old bridge had been in place for as long as she had lived there, 62 years. Oneita's house and barn were in place 64 years before the new bridge. Clara's house was in place 24 years before the new bridge. Riparian rights may attach to a watercourse that has been artificially altered, under certain circumstances. See *Hornor*, 116 Kan. at 290 ("A stream does not lose the attributes of a watercourse by the fact that a part of its channel may have been artificially created"); 3 Farnham, Waters and Water Rights § 820 (1904) ("Rights may be acquired in an artificial condition of water in the same way that they can be acquired in real estate generally."). A genuine issue of material fact exists as to whether the Johnsons have riparian rights to the watercourse as altered by the old bridge.

The County owed a duty to the Johnsons, downstream property owners, not to change the natural watercourse in a way that caused substantial injury to their properties. See *Parker*, 58 Kan. at 39. The County also had a duty, in building the bridge over a watercourse, to provide a sufficient outlet for all water that may reasonably be expected to flow through the watercourse. See *Cuppy*, 26 Kan. at 762. Those duties are not mutually exclusive.

At oral argument, the defendants criticized the Court of Appeals' opinion for failing to apply or distinguish *Morris v. City of Kansas City*, 189 Kan. 52, 366 P.2d 788 (1961). In *Morris*, a nuisance case, a homeowner experienced flooding from an undersized culvert underneath a city street. The homeowner successfully sued the city, claiming that the inadequate culvert was a nuisance. On appeal, the city argued that it did not create the nuisance (the street was annexed, not built by the city), so it should not be liable. We affirmed and held that a nuisance did exist, but also stated:

> "Moreover, we are inclined to believe that the defendant city owed a greater duty to fix this inadequate culvert because it in effect constituted a bridge over which a city street passed. It is an ancient rule that a city is responsible for the condition of the streets within its corporate limits. As we remember it, the rule goes back to the duty to keep the King's highway in repair. . . .
>
> . . . .
> "In the case at bar, the city was maintaining what amounted to a dam, formed by the city street, on a natural drain. The city knew for many months if not for more than a year of the danger to the plaintiff." 189 Kan. at 55.

The County argues that the Court of Appeals' opinion conflicts with *Morris*. We disagree. No one disputes that the County had a duty to design, construct, and maintain a bridge that provided adequate drainage as the Ninnescah flowed underneath. The duty to maintain adequate bridges and the duty not to cause substantial injury to downstream property owners must be superimposed on one another. The Johnsons contend that the new bridge diverts water from the flood plain and forces it underneath the bridge, causing the channel to widen and erode their stream banks. *Morris* does not stand for the proposition that because a city has a duty to maintain bridges, it has no liability for any damage caused by the design of a new and larger bridge.

The County also argues that *Baldwin*, 205 Kan. 1, controls this case. In *Baldwin*, we held that a city is not liable for damages to property adjacent to a natural drainway caused by increased surface water flow resulting from the city's growth and development. 205 Kan. at 7-8. The Johnsons reason that the flood plain constitutes part of the natural watercourse during flooding. *Baldwin*, a surface water case, is not controlling.

The County asserts that the Court of Appeals' holding obligates it to maintain the old bridge. We disagree. The County owed the duty to avoid causing substantial injury to downstream property when it constructed the new bridge. No aspect of that duty prevented the County from replacing the old bridge.

## MCE

MCE contends that because it was not in privity with the Johnsons, it owes them no duty—even though MCE designed the bridge for the County. In *Schmeck v. City of Shawnee*, 232 Kan. 11, 27, 651 P.2d 585 (1982), we judicially adopted the Restatement (Second) of Torts § 324A (1964), which provides:

"Liability to Third Person for Negligent Performance of Undertaking

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 672 P.2d 1083 (1983), we applied § 324A to hold a consulting engineer under contract with the Kansas Turnpike Authority to inspect bridges, liable to the survivors of a truck driver killed after his truck struck a hole in the bridge deck. The engineering firm owed a duty to the members of the traveling public, including the deceased, to exercise reasonable care in providing safety inspection services. 234 Kan. at 295.

MCE fits the requirements of § 324A. The County entered into a contract with MCE for the design of the bridge. The County owed a duty to downstream landowners, such as the Johnsons, not to cause substantial injury. MCE undertook, by express contract, to render engineering and design services to the County and oversee construction of the new bridge. MCE should have recognized that those services would be necessary for the protection of the persons using the bridge and the upstream and downstream property owners. MCE should be subject to liability for any failure to exercise reasonable care as to those third parties. MCE undertook the duty the County owed to downstream property owners in connection with the design of the new bridge.

The Court of Appeals reasoned that if a natural feature, rather than the old bridge, had directed flood water south to the flood plain, then under the rule in *Parker*, "the defendants would clearly owe a duty to warn or protect the Johnsons against erosion from changes in the flow of water caused by the new bridge." 21 Kan. App. 2d at 83. Our holding in this case does not impose, as a matter of law, a duty to warn or affirmatively protect downstream property owners. However, the duty not to cause substantial injury to the Johnsons provides the basis of a claim sufficient to withstand summary judgment.

MCE argues that affirming the Court of Appeals' holding will make it virtually impossible for KDOT and counties to replace rural bridges in Kansas using federally shared funds. We disagree. Our holding imposes a duty not to cause substantial injury to downstream properties when such bridges are replaced. The holding applies existing Kansas law.

## The Tort Claims Act

The County asserts that it is immune from liability under K.S.A. 1995 Supp. 75-6104(m).

The KTCA is considered an open-ended act, meaning that liability is the rule and immunity the exception. *Dougan*, 243 Kan. at 318. See K.S.A. 75-6103(a). The County is a "governmental entity" subject to the KTCA. K.S.A. 1995 Supp. 75-6102. K.S.A. 1995

Supp. 75-6104(m) provides an exception to liability for damages resulting from:

"(m) the plan or design for the construction of or an improvement to public property, either in its original construction or any improvement thereto, if the plan or design is approved in advance of the construction or improvement by the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

Once a K.S.A. 82a-301 permit is obtained, the construction must proceed in conformance with the permit. K.S.A. 82a-303 provides:

"The chief engineer of the division of water resources shall have power to grant or withhold such consent or permit or may incorporate in and make a part of said consent or permit such terms, conditions and restrictions as may be deemed by him or her advisable. It shall be unlawful to: (a) Construct or begin the construction of any dam or other water obstruction, or (b) make or begin any change or addition in any dam or other water obstruction, except in accordance with the terms, conditions and restrictions of such consent or permit, and such rules and regulations as may be adopted by the chief engineer of the division of water."

The County did not apply for a K.S.A. 82a-301 permit until June 1991, approximately 3 years after the bridge was built. The permit was not received until April 1993.

The County and MCE argue that KDOT's approval of the bridge plans prior to construction should satisfy K.S.A. 1995 Supp. 75-6104(m). Although KDOT approved the bridge plans (see K.S.A. 68-1111), the Division, not KDOT, holds the approval authority for the permit required for a channel alteration. K.S.A. 82a-301. The County, MCE, and KDOT do not argue that a Division permit was unnecessary; consequently, they constructively concede that the Division also had to approve the plans. K.S.A. 1995 Supp. 75-6104(m) requires prior approval by "the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval." The approval must come from the governing body given the statutory authority to approve such plans, in this case, the Division. Prior approval was not obtained, so 75-6104(m) does not apply. Consequently, the district court need not consider the second 75-6104(m) exemption

requirement that the plan must conform to generally recognized and prevailing standards in existence at the time the plan or design was prepared. We note that the Johnsons' expert, McEnroe, believed that "[f]ailure of the designer to consider the effect a bridge will have on downstream conditions is a deviation from accepted engineering standards and practices."

The County is not entitled to summary judgment on the basis of K.S.A. 1995 Supp. 75-6104(m).

## The Statute of Limitations

The parties agree that the applicable statute of limitations is governed by K.S.A. 60-513(a)(4). The action must be brought within 2 years. K.S.A. 60-513(b) provides in relevant part:

"[T]he causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party . . . ."

The K.S.A. 60-513(b) term "substantial injury" does not require an injured party to have knowledge of the full extent of the injury to trigger the statute of limitations. Rather, "substantial injury" means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent. *Roe v. Diefendorf*, 236 Kan. 218, 222, 689 P.2d 855 (1984).

Was the injury permanent or temporary? The answer is the determinative factor in commencing the statute of limitations in damage actions from flooding allegedly caused by construction. *Dougan v. Rossville Drainage District*, 2 Kan. App. 2d 125, 128, 575 P.2d 1316, *rev. denied* 225 Kan. 843 (1978) (citing *Henderson v. Talbott*, 175 Kan. 615, 621, 266 P.2d 273 [1954]). See also *Gowing v. McCandless*, 219 Kan. 140, 145, 547 P.2d 338 (1976) (owner of land injured by overflows and poor drainage caused by abatable condition or nuisance has right to assume condition or nuisance will be abated; evidence showed obstructions were not "permanent" and could be removed from the drainage ditch; obstructions also were not "permanent" in a legal sense because they were not approved by the Division).

At oral argument, MCE's counsel complained that the Court of Appeals failed to acknowledge *Thierer v. Board of County Commissioners*, 212 Kan. 571, 512 P.2d 343 (1973), asserting that *Thierer* is "on all fours" with this case. We disagree with MCE's reading of *Thierer*. In *Thierer*, the Geary County Commissioners in 1959 altered the channel of a stream during the relocation of a bridge and county road. Henry and Nellie Thierer were upstream property owners. In 1962, a levee broke as a result of the alteration. The Thierers' property was flooded. The Thierers repaired the levee. In 1966, they noticed that a low water crossing to their property was no longer passable. The levee broke again. Again the Thierers' property flooded. The commissioners unsuccessfully attempted to restore the low water crossing in 1966 and 1967. In 1967, the Thierers filed suit, seeking damages and a mandatory injunction to restore the low water crossing and return the upstream channel to its former condition. The district court awarded a mandatory injunction to have the low water crossing restored but denied damages, determining that the Thierers were seeking permanent damages that were reasonably ascertainable in 1962. We reversed the mandatory injunction award and affirmed the dismissal of the damages count, reasoning that all counts were time barred.

"Plaintiffs made no effort in the trial court to amend their pleadings to include temporary damages. Likewise, they made no effort to submit to the trial court the issue of temporary damages. The first assertion of temporary damages appears on appeal. An issue not presented to the trial court cannot be a subject for appellate review." 212 Kan. at 573.

In the present case, the Johnsons' petition prayed generally for damages without specifically alleging temporary or permanent damages. Prior to the district court's hearing of the summary judgment motions, the Johnsons moved the district court for leave to amend their petition to expressly plead temporary damages. The motion was denied. The issue of temporary damages should remain alive for purposes of this appeal. The district judge, in denying the motion to amend, postponed the temporary versus permanent damages question to the summary judgment hearing, where it was addressed and ruled upon. Although there are factual similarities

between *Thierer* and this case, the failure to preserve the issue of temporary damages for appeal in *Thierer* distinguishes it.

*Dougan,* 2 Kan. App. 2d 125, addressed the question of when a cause of action for permanent damages from flooding accrues. The drainage district made a number of alterations to a network of drainage ditches and waterways between 1942 and 1954 without the knowledge and consent of the Division's chief engineer. Dougan experienced flooding in 1967 and 1973 as a result of the alterations. After the 1967 flood, Dougan discussed a possible solution with the drainage district. The drainage district did some dredging work, at its own expense. Dougan filed suit in 1974 after the 1973 flooding, seeking a permanent injunction, permanent damages to real estate, and temporary damages for lost crops. The district court granted the drainage district's motion for summary judgment, determining that Dougan's permanent damages claim accrued in 1967 and the action was time barred. The Court of Appeals reversed, observing: "The flooding in this case is temporary, occasional and recurrent. There is no indication or allegation that the flooding caused permanent injury to the land itself in 1967." 2 Kan. App. 2d at 129.

The district court determined that Oneita suffered permanent damages to her property in 1988; consequently, her cause of action accrued at that time and her entire claim was time barred. The district court also determined that equitable estoppel did not apply to toll the statute of limitations as a result of the remedial work the County did in 1988. The Court of Appeals agreed that the 1988 damages were "permanent" and time barred, but reversed the holding that Oneita could not claim damages incurred in the 1991 flood. The Court of Appeals agreed that equitable estoppel did not apply. (At oral argument before this court, the Johnsons' counsel conceded his equitable estoppel argument was not persuasive.)

The Court of Appeals affirmed the district court's determination that Clara's claims from the 1988 flood and the 1991 flood were not time barred. Clara could not have ascertained her future damages in 1988. The record did not indicate that Clara suffered substantial injury or knew that the bridge caused any erosion to her property in 1988. The Court of Appeals also noted contradictory

statements, either by Clara or her attorney, as to the amount or extent of erosion damages she suffered in 1988. 21 Kan. App. 2d at 88-89. A genuine issue of material fact exists as to whether she suffered substantial injury in 1988.

We question the reasoning of the Court of Appeals in acknowledging that Oneita's 1988 erosion damages were permanent and time barred, while holding that she is not time barred from claiming her 1991 erosion damages. If Oneita suffered permanent damages in 1988, then her cause of action for permanent damages accrued as of that time, and she should have brought her claim for past, present, and future damages at one time within the 2-year statute of limitation. See *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 8, 662 P.2d 1203 (1983); *Thierer*, 212 Kan. at 575.

A genuine issue of material fact exists as to whether Oneita's 1988 damages were temporary or permanent. In the literal sense, Oneita's property suffered erosion in 1988 that is permanent in nature. Nothing will bring back the soil that is gone. In addition, the cause of the erosion, the bridge, is without question a permanent structure. All agree that the erosion will continue, absent corrective measures. However, in 1988, the County took some remedial action in response to Oneita's complaints after the flood. The County's conduct in this case does not give rise to an equitable estoppel, but it does raise the issue of whether Oneita thought the cause of her damage was abatable in 1988. Viewing the facts most favorably to Oneita, she complained to the County as soon as she suffered erosion. The County responded by doing some work in an effort to solve the problem. Afterward, she had her attorney ask if the County was going to do any riprapping, and the County said riprapping was not necessary. Oneita may have thought that the cause of her injury was abated at that point. She would have no reason to believe the bridge would be removed, which is not what she had requested. But she may have had reason to believe that the County had solved the erosion problem. She had no further dealings with the County until after the 1991 flood. At that point, she realized the problem was not solved. She and Clara had riprapping done themselves. Oneita did file suit within two years of the 1991 flood.

The County's failure to obtain a permit for the bridge until 1993 also relates to the issue of whether the Johnsons' damages in 1988 or 1991 were temporary or permanent. See *Gowing*, 219 Kan. at 145. The Division informed the County by letter dated June 6, 1991, that the County must apply for a permit under K.S.A. 82a-301.

The Johnsons filed an objection to the permit application with the Division. Although the Johnsons were ultimately unsuccessful in obtaining any relief for their erosion problems through the permit application process, the possibility of relief was at least open until the permit was issued.

Oneita's damage claim from the 1988 flood, whether it is temporary or permanent, is barred by the statute of limitations. She suffered substantial erosion after the 1988 flood, believed it was caused by the new bridge, and immediately complained to the County about it.

### The K.S.A. 82a-301 Permit

The County and MCE contend that because the permit was eventually obtained, the lack of a permit before construction is a moot issue in this litigation. We agree with the Court of Appeals that the Johnsons should be allowed to raise the issue of the County's failure to obtain a permit before construction where it is relevant to the other issues raised. Obtaining the after-the-fact permit under 82a-301 did not establish that the bridge was lawful for all purposes at the time it was built. The permit issue is relevant, as we have noted, to applicability of the County's tort claims exemption defense under K.S.A. 1995 Supp. 75-6104(m). Failure to obtain the permit also is relevant to the question of whether the Johnsons' damages are temporary or permanent.

Failure to obtain the mandatory permit injects a nettlesome element into the fact scenario of this litigation. For convenience, we quote K.S.A. 82a-301:

"Without the prior written consent or permit of the chief engineer of the division of water resources of the state board of agriculture, it shall be unlawful for any person, partnership, association, corporation or agency or political subdivision of the state government to: (a) Construct any dam or other water obstruction, (b)

make, construct or permit to be made or constructed any change in any dam or other water obstruction, (c) make or permit to be made any change in or addition to any existing water obstruction, or (d) change or diminish the course, current, or cross section of any stream within this state. Any application for any permit or consent shall be made in writing in such form as specified by the chief engineer. Jetties or revetments for the purpose of stabilizing a caving bank which are properly placed shall not be construed as obstructions for the purposes of this section."

Compliance with 82a-301 may either have prevented or reduced the damages alleged by the Johnsons. We assume the notice requirements in K.S.A. 82a-301 through -305a and the accompanying rules and regulations (see, *e.g.*, K.A.R. 5-42-1, requiring names and addresses of adjoining property owners to be included in plans for a stream obstruction submitted for approval to the Division) are currently complied with as the rule rather than the exception. However, we observe that failure to comply with 82a-301 has surfaced in previous water law cases (see, *e.g.*, *Gowing*, 219 Kan. at 145; *Simon*, 193 Kan. at 345-47; *Dougan*, 2 Kan. App. 2d at 129-30). If our assumption is correct, the fears expressed by the County and MCE concerning the difficulties counties will encounter in future bridge replacements would appear to be exaggerated. If our assumption is incorrect, we suggest that the appropriate state agencies and governmental subdivisions comply with the statutory permit requirements.

## The K.S.A. 12-105b Notice of Claim

Did the Johnsons' notice of claim to the County fail to comply with K.S.A. 12-105b, thus barring a separate claim by Oneita based upon statements made and remedial work done by the County after the 1988 flood?

K.S.A. 12-105b(d) provides in relevant part:

"(d) Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action."

The Johnsons filed a K.S.A. 12-105b(d) notice before filing their lawsuit. The notice claimed damages from erosion allegedly caused by the new bridge, but did not mention any claim in connection with the remedial work done or statements made by the County

after the 1988 flood in response to Oneita's complaints. The Johnsons' petition also does not plead a separate claim against the County concerning any statements or remedial work.

Under K.S.A. 12-105b, persons with tort claims are required to give notice to a municipality, including a county (see K.S.A. 12-105a[a]), before filing suit; however, those with contract claims are not. *Wiggins v. Housing Authority of Kansas City*, 19 Kan. App. 2d 610, Syl. ¶ 2, 873 P.2d 1377, *rev. denied* 255 Kan. 1007 (1994). At oral argument before this court, the Johnsons' counsel was asked whether his clients were pursuing a separate claim against the County in connection with this remedial work. Counsel left the impression that his clients were. Although the district judge characterized the claim as a contract claim, he determined that the claim was not pleaded in the petition and K.S.A. 12-105b had not been complied with.

On appeal, the Johnsons argued to the Court of Appeals that the County owed them a separate duty under Restatement (Second) of Torts § 323 (1964) by reason of the County's statements to Oneita after the 1988 flood and the remedial work. The County responded that the district court denied this "claim" for noncompliance with 12-105b.

The record indicates that the district judge made a ruling, although he labeled the 12-105b claim a contract claim. The reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason. *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.2d 811 (1989). Any separate claim against the County in connection with the 1988 remedial work under § 323, or any other tort theory, is barred for failure to comply with 12-105b. However, the Johnsons are not prevented from bringing up the 1988 remedial work in connection with their statute of limitations arguments pertaining to their pleaded damage claims.

## The Motion to Amend

After the County and MCE filed their motions for summary judgment but several months before the motions were set for hearing, the Johnsons filed a motion to amend their petition. The Johnsons' amendment asserted that they were seeking only temporary

damages caused by the 1988 and 1991 floods and sought to add a nuisance claim for abatement against the County and MCE.

The district court denied the motion to amend to seek temporary damages and to add the nuisance claim, citing the 75-6104(m) exception to the KTCA.

The Court of Appeals determined the denial was error, stating: "Maintaining a structure that causes recurrent flooding can constitute a nuisance. See *Dougan*, 243 Kan. at 319-20." 21 Kan. App. 2d at 90. We agree.

Recurrent erosion damages resulting from the greatly increased volume of flood water under the new bridge may constitute a nuisance. *Union Trust Company v. Cuppy*, 26 Kan. 754 (1882), indicates that a plaintiff suffering damages from a watercourse obstruction that is a nuisance has the option of seeking temporary (past) damages and abatement or permanent (past and future) damages without abatement. If the Johnsons limit their damage prayer to temporary damages, then they should also be able to request abatement of the nuisance. Even if they can establish a nuisance, the Johnsons will bear the burden of showing they are entitled to injunctive relief, depending on whether abatement of the erosion is possible or practical. Granting leave to amend the petition is not a determination of the claim.

K.S.A. 60-215(a) provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." A district court is given broad discretionary power under 60-215 to permit the amendment of pleadings. An appellate court will not find reversible error unless the amendment allowed or denied is so material it affects the substantial rights of the adverse party. *Williams v. Amoco Production Co.*, 241 Kan. 102, 109, 734 P.2d 1113 (1987).

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should as the rules require, be 'freely given.' " *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

Accord *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1002, 667 P.2d 879 (1983) (quoting 6 Wright & Miller, Federal Practice and Procedure: Civil § 1487 [1971]).

None of the grounds set out in *Dutoit* appear to exist. The district court apparently denied the motion to amend on the grounds that the amendment would be futile.

The nuisance issue should not be disposed of at the pleading stage, absent sufficient uncontroverted facts that such relief is not warranted or practical.

### The County's Claim Against KDOT

KDOT moved for summary judgment on the County's third-party claim for indemnification. One of the grounds alleged was that under the terms of a 1975 initial agency agreement between the County and the State Highway Commission (KDOT's predecessor), which was still in effect when the parties entered into the November 2, 1987, contract for the bridge construction, the County agreed to

"save [KDOT] harmless from any and all costs, liabilities, expenses, damages, suits, judgements [*sic*] and claims of any nature whatsoever arising out of or in connection with the performance of any contract, . . . or the construction or maintenance of any project, or of the acts of [KDOT], its authorized agents or employees, when acting under the provisions of this agreement and any contracts or agreements entered into in connection therewith."

The district court dismissed the third-party complaint against KDOT as moot and did not reach the "hold harmless" issue.

The Court of Appeals elected to address KDOT's motion for summary judgment on the merits and determined that the hold harmless clause did effectively bar the County from seeking indemnification against KDOT. The Court of Appeals reasoned that the 1987 agreement for this specific bridge and the 1975 general agency agreement did not conflict. The Court of Appeals, without discussion of indemnification for one's own negligence, affirmed the district court's ruling, but for a different reason. 21 Kan. App. 2d at 92. We reverse.

We acknowledge that a party may contract away responsibility for its own negligence. See *Corral v. Rollins Protective Services*

*Co.*, 240 Kan. 678, 680-81, 732 P.2d 1260 (1987). However, an agreement seeking to protect a party from liability for its own negligence is subject to strict construction and will not be enforced unless the protection from liability is expressed in clear and unequivocal terms. *Zenda Grain & Supply Co. v. Farmland Industries, Inc.*, 20 Kan. App. 2d 728, Syl. ¶ 1, 894 P.2d 881, *rev. denied* 257 Kan. 1097 (1995). Contracts for the exemption from liability for negligence are not favored by the law and are strictly construed against the party relying on them. 20 Kan. App. 2d 728, Syl. ¶ 2. *Butters v. Consolidated Transfer & Warehouse Co., Inc.*, 212 Kan. 284, Syl. ¶ 2, 510 P.2d 1269 (1973), states:

"It is a general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed thereto, and mere general broad and seemingly all-inclusive language in the indemnifying agreement is not sufficient to impose liability for the indemnitee's own negligence."

The language of the 1975 agreement does not qualify under *Zenda, Butters,* and *Corral* as an enforceable hold harmless agreement. The language is not expressed in terms clear and unequivocal enough to contract away KDOT's own negligence. Our conclusion is supported by the language of the specific "hold harmless" clause in the November 2, 1987, contract for the bridge in question:

"The LPA [the County] hereby expressly agrees to save the Secretary [of KDOT] and the Secretary's authorized representatives harmless from any and all costs, liabilities, expenses, suits, judgments and damages to persons or property caused by the LPA, it's [*sic*] agents, employees or subcontractors which may result from negligent acts, errors, mistakes or omissions from the LPA's operation in connection with the services to be performed hereunder."

Traditional "hold harmless" language was used in the 1987 contract (*i.e.*, the County agreed to hold KDOT harmless from damages caused by the County's negligence).

In addition to the hold harmless clause, KDOT raised a statute of limitations defense and an argument that as the County's agent, KDOT should have no liability to the County. The Court of Appeals considered the agency argument and found it lacked merit. We agree. We remand to the district court for resolution of the

statute of limitations defense and any other grounds not already addressed that were raised in KDOT's motion for summary judgment.

## CONCLUSION

We have stated that one who installs a bridge owes a duty not to change the channel or stream of the natural watercourse in ways that will cause substantial injury to downstream riparian owners. The trier of fact in the present case must determine what is to be considered the natural watercourse: the river, as altered by the old bridge, or the river, without regard to the presence of any bridge. As discussed previously, there remain material issues of fact as to whether the Johnsons have any prescriptive rights to the condition of the river as it existed with the old bridge. The trier of fact must then find whether the new bridge changed the channel or stream, causing substantial injury to the Johnsons' properties. If substantial injury is found, then the nature (permanent or temporary) and extent of the damages and relief (monetary, injunctive, or both) to which the Johnsons may be entitled must be determined.

We reverse the summary judgment granted to defendants in part and affirm in part. We hold: (1) The Johnsons have stated a claim against the County and MCE based on a duty owing to the Johnsons, (2) K.S.A. 1995 Supp. 75-6104(m) does not provide immunity to the County, (3) Oneita's damages from the 1988 flood are time barred, (4) Oneita's damage claim from the 1991 flood is not time barred if the trier of fact determines her 1988 flood damages are temporary, (5) Clara's damage claims from the 1988 and 1991 floods are not time barred, (6) the failure to obtain the K.S.A. 82a-301 permit before construction is not a moot issue, (7) Oneita is barred from bringing a separate claim under Restatement (Second) of Torts § 323 based on the County's statements and remedial work done after the 1988 flood, (8) the district court erred in denying the Johnsons' motion to amend their petition and to add a nuisance claim for abatement, and (9) KDOT's motion for summary judgment should not have been granted on the basis of the 1975 hold harmless clause.

The case is remanded to the district court for disposition consistent with the above holdings.