NOT DESIGNATED FOR PUBLICATION

No. 124,242

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MANZOOR JAGHOORI,
*Appellant*,

v.

DONALD LANGFORD, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; CAREY L. HIPP, judge. Opinion filed March 4, 2022.
Affirmed.

*Bradley T. Steen*, of Law Office of B. Truman Steen, LLC, of Ellsworth, for appellant.

*Robert E. Wasinger*, legal counsel, of Kansas Department of Corrections, Ellsworth Correctional
Facility, for appellee.

Before GREEN P.J., ATCHESON and HURST, JJ.

PER CURIAM: Manzoor Jaghoori, an inmate in the State prison system, has
appealed the Ellsworth County District Court's dismissal of his habeas corpus petition
alleging the Kansas Department of Corrections improperly refused to restore good time
credit he lost as punishment for various rules infractions. Jaghoori contends that the
governing administrative regulations require the restoration because he was granted a
new trial on the crime for which he has been imprisoned and was again convicted and
sentenced after the Department had reduced his good time. Although the regulations are

1

something less than a model of clarity, they do not support Jaghoori's contention. We, therefore, affirm the district court's decision.

## FACTUAL AND PROCEDURAL HISTORY

Jaghoori was convicted of aggravated robbery and several other charges in a 2007 jury trial in Johnson County District Court and received a controlling sentence of 216 months in prison. While serving the sentence, Jaghoori earned good time credits that effectively reduced the prison term and accelerated his release date. But he also committed violations of prison rules and lost some of that good time as punishment. The particulars of the rules infractions and the amount of good time Jaghoori lost are immaterial to this appeal.

After those infractions and the resulting reductions in good time happened, we granted Jaghoori a new trial because his original trial lawyer had been constitutionally ineffective. See *Jaghoori v. State*, No. 108,892, 2013 WL 5925964, at *9 (Kan. App. 2013) (unpublished opinion). In the retrial in 2014, Jaghoori was again convicted of aggravated robbery but acquitted of the other charges. The district court again sentenced Jaghoori to 216 months in prison and properly granted him credit for the time he had already served on the original convictions. As reflected in the journal entry of conviction, the district court determined the credit to be 2,957 days and ordered the "sentence begins date" adjusted accordingly. As we discuss, "sentence begins date" is a defined term in the Department's administrative regulations and is used to compute sentences and potential release dates. See K.A.R. 44-6-101(e)(2). Although Jaghoori was sentenced in 2014, his "sentence begins date" was pushed back 2,957 days into 2006 to afford him credit for the time he had already served.

In June 2021, Jaghoori filed a habeas corpus petition, under K.S.A. 60-1501, in Ellsworth County District Court alleging the Department could not apply the good time

reductions he received before 2014 to the 216-month prison term the Johnson County District Court imposed on him in 2014. Jaghoori has cited K.A.R. 44-6-125(c) in support of his argument and contends the Department has failed to follow its own regulations. Using a form order, the district court dismissed Jaghoori's habeas corpus action in June 2021 for two reasons. The district court found, without further explanation, that the petition failed to allege facts warranting relief. And second, the petition failed to recite other civil actions Jaghoori had filed in the last five years, as required by K.S.A. 60-1502. Jaghoori has appealed.

LEGAL ANALYSIS

We see no disputed facts bearing on Jaghoori's claim, and the issue turns on the proper interpretation of the governing administrative regulations. That amounts to a question of law we address without deference to either the district court or the Department. *Woessner v. Labor Max Staffing*, 312 Kan. 36, 45, 471 P.3d 1 (2020); *Davis v. McKune*, 28 Kan. App. 2d 14, 16, 11 P.3d 503 (2000). We turn to K.A.R. 44-6-125(c), the foundation for Jaghoori's claim. In pertinent part, the regulation states:

> "If an inmate receives an award of jail credit from the sentencing court after issuance of the original journal entry of sentencing and the sentence computation is revised accordingly, previous forfeitures of good time or program credits shall not be revised or modified. In cases of a new sentence conviction, disciplinary offenses occurring before the effective date of the new sentence that result in the forfeiture of good time or program credits shall not be applied to the computation." K.A.R. 44-6-125(c).

Jaghoori zeroes in on the second sentence of the quoted language and says he received a "new sentence conviction" in 2014 and, therefore, his previous forfeitures of good time cannot be applied against that term of imprisonment. In other words, he contends the regulation requires the restoration of the good time he lost because of his violations of the prison rules before 2014.

3

We recently wrestled with this administrative regulation and found the phrase "new sentence conviction" to be odd and something short of self-explanatory. *Jamerson v. Heimgartner*, No. 123,015, 2021 WL 2386053, at \*3 (Kan. App. 2021) (unpublished opinion). The phrase is neither a defined term nor one of art in the sentencing statutes and the Department's related regulations. It apparently crops up only in K.A.R. 44-6-125(c).

We recap *Jamerson* to set the legal stage for Jaghoori's claim. After James Jamerson, an inmate in state prison, filed a successful motion to correct an illegal sentence and had been resentenced, he sought restoration of forfeited good time on the grounds he had received "new sentence conviction" within the meaning of K.A.R. 44-6-125(c). Without looking beyond the language of K.A.R. 44-6-125, we found the district court properly rejected Jamerson's claim. We characterized "new sentence conviction" as an "administrative or bureaucratic shorthand" for some collection of cases that was not especially well defined by the phrase. 2021 WL 2386053, at \*2. Nevertheless, we concluded Jamerson received no benefit under the regulation because he did not have a new conviction—only a corrected sentence for an existing conviction. And we could discern no good policy justification for Jamerson's position. His corrected sentence provided a complete remedy for the illegal sentence the district court originally imposed. Restoring the good time credits Jamerson lost as punishment for his violations of prison rules while he served the original sentence lacked any tangible connection to the sentencing error and, as a result, would have been entirely gratuitous. 2021 WL 2386053, at \*3.

Without trying to fashion a complete definition for "new sentence conviction" in *Jamerson*, we surmised the phrase would reach at least two recurrent scenarios: (1) the prosecution and conviction of an inmate for a crime committed during his or her incarceration; and (2) a prosecution and conviction of an inmate for a crime committed before he or she was incarcerated and unrelated to the crime of conviction resulting in the incarceration. But we noted as a hypothetical what we considered "a more complicated

4

scenario" under K.A.R. 44-6-125(c)—an inmate who has had a conviction reversed and the concomitant sentence vacated and is then convicted in a new trial and receives a new sentence. We offered no suggestion in *Jamerson* on how the situation should be resolved. 2021 WL 2386053, at *2. Jaghoori presents that hypothetical brought to life, as he and the Department have (not surprisingly) pointed out.

Jaghoori makes a superficially appealing claim for restoration of the good time credit he lost before he was convicted and sentenced in 2014. After all, both the conviction and resulting sentence were new; they effectively replaced the ones from 2006 that our court set aside. Jaghoori submits his circumstance—a new conviction in a retrial with a new sentence—simply wipes the administrative good time credit slate clean. So, according to Jaghoori, an inmate with good time credit earned before the retrial and new sentence would no longer get the benefit of that credit and an inmate like himself would no longer face a reduction for the good time lost as punishment for past violations of prison rules. But, as we outlined in *Jamerson*, that approach advances no sound penological policies and would rather arbitrarily disadvantage inmates who abide by the prison rules and accumulate good time credit. We, of course, endeavor to construe vague statutory or regulatory language to avoid unreasonable outcomes. See *State v. Arnett*, 307 Kan. 648, 654, 413 P.3d 787 (2018).

And there is another wrinkle here. As we have said, Jaghoori also received a "sentence begins date" from the district court in 2014 reaching back to 2006, thereby formally giving him credit for the time he had already served in prison. The Department argues that the phrase "the effective date of the new sentence" in K.A.R. 44-6-125(c) should be read to mean the "sentence begins date." Construed that way, Jaghoori would be entitled to no relief, since all of his rules violations occurred after the sentence begins date in 2006. Jaghoori has offered no rejoinder to the Department's suggestion.

5

But we find the Department's narrow argument unsatisfactory as a matter of statutory construction. If the authors of the regulation had meant "sentence begins date" in K.A.R. 44-6-125(c), they presumably would have said so using that defined term and not a sort of synonym. Courts typically should construe a recurrent phrase in related statutes or regulations to mean the same thing and different phrases to mean something else. See *Law v. Siegel*, 571 U.S. 415, 422, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014) (applying "'normal rule of statutory construction'" recognizing that "words repeated in different parts of the same statute generally have the same meaning"); *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (use of different terms within a statute demonstrates legislative intent to convey different meanings); *Jane Doe No. 1 v. Backpage.com*, 817 F.3d 12, 23 (1st Cir. 2016) ("The normal presumption is that the employment of different words within the same statutory scheme is deliberate, so the terms ordinarily should be given differing meanings."). The more logical and obvious meaning for "effective date" would be the date the district court pronounced the sentence and it, thus, became effective.

But in the broader context of the administrative regulations governing sentence computation, the Department's general point has merit, since Jaghoori had a "sentence begins date" the district court established in 2014 in conjunction with his new sentence. In K.A.R. 44-6-115a(b)(1), the Department outlines how good time credits should be determined based on an inmate's sentence begins date. The regulation provides: "At the conclusion of the initial inmate classification, 100% of the good time credits available from the sentence begins date to the date of the initial good time award shall be awarded, unless there is written documentation of maladjustment before the date of the initial award." K.A.R. 44-6-115a(b)(1). That regulation intersects with the purpose and operation of K.A.R. 44-6-125 pertaining to good time credit. The two, therefore, should be read in tandem and harmonized as their language permits. See *Woessner*, 312 Kan. at 49; *State v. Baker*, 56 Kan. App. 2d 335, 341, 429 P.3d 240 (2018) (*in pari materia* canon

6

"calls for reading an ambiguous statute in a way that harmonizes its language and operation with related statutes").

As we have suggested, the portion of K.A.R. 44-6-125(c) Jaghoori relies on appears to address circumstances in which an inmate with an existing sentence receives another sentence for a new crime of conviction and, thus, has two sentences going forward. Jaghoori did not fit in one of those situations despite the confusion arising from the phrase "new sentence conviction." Conversely, the treatment of a "sentence begins date" in K.A.R. 44-6-115a(b)(1) covers Jaghoori and does so without generating peculiar policy repercussions.

Under K.A.R. 44-6-115a(b)(1), as an inmate with a new sentence in 2014, Jaghoori initially should be credited with all of the good time due from the sentence begins date, thereby taking account of his time in custody preceding that sentencing. The regulation, however, expressly provides that the computed good time should be reduced for any documented "maladjustment" during that period. That's what the "unless" clause requires. Here, of course, Jaghoori had just that kind of maladjustment—his multiple violations of the prison rules before 2014 resulting in disciplinary sanctions, including the loss of earned good time.

In short, K.A.R. 44-6-115a(b)(1) resolves the hypothetical posed in *Jamerson*. We simply didn't look that far in *Jamerson* precisely because the circumstance presented an academic curiosity in that case. Here, we necessarily scan more widely than just K.A.R. 44-6-125 to address and decide Jaghoori's challenge to the determination of his good time credit. We come to K.A.R. 44-6-115a(b)(1), a regulation that reasonably deals with the issue adversely to Jaghoori and doesn't conflict with our plausible construction of K.A.R. 44-6-125(c). The district court, therefore, reached the correct result, since Jaghoori's substantive argument for restoration of his lost good time is amiss.

7

To wrap up, we mention that the district court should not have immediately dismissed the 60-1501 petition because it did not list the civil actions, if any, Jaghoori had filed in the preceding five years. On appeal, the Department agrees Jaghoori's petition was prematurely dismissed on this basis. The district court properly could have noted the deficiency and ordered Jaghoori to file an amended petition within a fixed time correcting the omission. See *Griffin v. Gilchrist*, 33 Kan. App. 2d 233, 236, 100 P.3d 99 (2004) ("[W]hen a petition for habeas corpus falls somewhat short in certain respects of the statutory requirements of K.S.A. 2003 Supp. 60-1502, the appellate courts of Kansas have either been lenient and considered the petition or have given petitioner the opportunity to make the necessary corrections before summarily dismissing the petition."). The rule in *Griffin* is consistent with the usual practice permitting a civil plaintiff the opportunity to file an amended petition correcting procedural or other technical deficiencies before being tossed out of court. See *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, Syl. ¶ 15, 913 P.2d 119 (1996).

Affirmed.